EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RA-
FAEL CANCEL PERAZA y WILFREDO SALAMÁN TIRADO, acu-
sados y apelantes.

*Número:* CR-76-144 *Resuelto:* 13 de mayo de 1977

*Benigno Alicea Alicea,* abogado de los apelantes; *Roberto Armstrong, Jr., Procurador General Interino, y Miguel A. Santana Bagur, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Contra los aquí apelantes se formularon acusaciones por asesinato en primer grado, ataque para cometer asesinato, robo, e infracciones a los Arts. 8 y 6 de la Ley de Armas. Se basaron las acusaciones en sucesos ocurridos la tarde del 23 de diciembre de 1974. Para sostenerlas, el Ministerio Público presentó el testimonio de Doris Nieves Echevarría como única testigo presencial de los sucesos. Lo resumimos a continuación.

Doris, quien a la sazón contaba 17 años, y su novio Luis Edgardo Torres Dávila, se encontraban dentro de un automóvil que él conducía y que estacionó al final de una calle sin salida de una urbanización en construcción. Conversaban y se besaban, cuando de entre unos matorrales salieron tres individuos. Uno, nombrado Abelardo, portaba un revólver. Este se dirigió a Luis por el lado del volante del auto. Los otros dos avanzaron hacia el lado derecho, en que se encontraba Doris. Estos dos son los aquí apelantes, Wilfredo Salamán Tirado y Rafael Cancel Peraza, cuya identificación no se disputa. Abelardo ordenó a Luis y Doris que se desmontaran, lo que éstos hicieron. Por indicaciones de Abelardo, mientras apuntaba hacia Doris con el revólver, Salamán y Cancel despojaron a Doris de su reloj pulsera y a Luis de su billetera. Cuando esto ocurrió Doris y los apelantes se habían

movido al otro lado del carro. Indicó además Abelardo a sus dos acompañantes que quitaran la batería al carro y se llevaran la caja de herramientas.

Abelardo preguntó a Luis que de dónde eran él y Doris y éste contestó que de San Martín. Luis preguntó entonces si ellos—los asaltantes—eran de Saint Just. Ante esa pregunta, Abelardo miró a sus compañeros Salamán y Cancel, luego miró a Luis y dijo, "a este hay que liquidarlo." Ni Cancel ni Salamán protestaron. Acto seguido Abelardo disparó dos tiros contra Luis, éste cayó a tierra, y Abelardo le acercó el arma a la cabeza y lo ultimó de un tercer disparo. Entonces disparó hacia Doris. Ella se metió dentro del automóvil y allí Abelardo le hizo un segundo disparo que le rozó la cabeza. Ella cayó acostada en el asiento y él le hizo un tercer disparo por el costado derecho, que le interesó un seno. Se dispuso entonces Abelardo a tener relaciones sexuales con Doris y llegó a quitarle los pantalones que ella vestía, pero en eso se sintió el motor de un auto que se acercaba y los tres se dieron a la fuga, internándose en los matorrales de donde habían salido.

Doris pudo identificar positivamente a sus tres asaltantes varios días después, primero por fotografías y luego en rueda de detenidos. Abelardo, por ser menor de edad, fue procesado separadamente de los aquí apelantes. Estos han recurrido a nos en apelación contra las sentencias que les fueron impuestas. Alegan que erró el tribunal sentenciador, (1) al permitir que la acusación por asesinato se enmendara el 5 de junio de 1975 para alegar que los apelantes actuaron en concierto y de común acuerdo entre sí *y con otra persona,* que actuaron *con deliberación* y que al acometer y agredir al hoy interfecto con la intención de matarlo *lo hicieron en la comisión de un delito de robo;*[1] (2) al permitir que en ese mismo sentido se enmendaran las acusaciones por ataque para cometer asesinato y por las dos infracciones a la Ley de Armas,

---

[1] La acusación originalmente presentada omitía lo que hemos subrayado, que es lo adicionado en la acusación enmendada.

cuyas enmiendas se hicieron al terminar la prueba de cargo; (3) al declarar a los apelantes culpables sin que se probara más allá de duda razonable que actuaban *en común acuerdo con una tercera persona;* y, (4) al declararles culpables de asesinato en primer grado a base de la llamada *felony murder rule* sin que la prueba estableciese que la muerte ocurriera "como consecuencia del robo perpetrado" o que hubiera "participación directa de los imputados en los actos conducentes al asesinato." Ninguno de los alegados errores se cometió.

■ Respecto al primero, la enmienda se produjo al llamarse los casos para juicio el 5 de junio de 1975. Los apelantes dieron por leída la acusación enmendada y ratificaron su alegación de inocencia. No se les celebró juicio ese día, haciéndose un nuevo señalamiento para el 1 de julio de 1975, fecha en que comparecieron, nuevamente dieron por leídas las acusaciones, ratificaron la alegación de inocencia, y renunciaron a ser juzgados por jurado, renuncia que les fuera aceptada por haber sido hecha voluntariamente y con pleno conocimiento de su significado. No alcanzamos a comprender cómo bajo tales circunstancias pueda imputarse error.

■ El segundo planteamiento se basa en que al terminar la prueba de cargo y solicitar el abogado de los apelantes que se les absolviera por una argumentada incongruencia entre la prueba y las alegaciones, el fiscal solicitó y el tribunal le concedió permiso para dar por enmendadas las acusaciones por ataque para cometer asesinato, robo y por infringir la Ley de Armas, para alegar, conforme a la prueba desfilada, que los apelantes actuaron en concierto y común acuerdo entre sí *y con una tercera persona.* El tribunal resolvió el planteamiento mediante resolución escrita que nos negamos a revisar en el recurso O-75-360. Su resolución estuvo correctamente basada en la Regla 38(d) de las de Procedimiento Criminal.(²) No se trataba de una enmienda que introducía a las

---

(²) Dicho inciso (d) de la Regla 38 dispone:

acusaciones algún elemento que afectaba substancialmente los derechos de los acusados. A lo más que tenían derecho era que se les concediera tiempo para tratar de controvertir ese nuevo elemento, y el tribunal en este caso les concedió un receso por un término que efectivamente se extendió a más de dos meses. (³) No había necesidad de celebrar nuevo acto de lectura de acusación. No era sorpresa para los apelantes la prueba de que actuaron en concierto y común acuerdo con una tercera persona pues así se alegó en la acusación de asesinato enmendada el 5 de junio de 1975. Todas las acusaciones se referían a hechos ocurridos en una misma fecha—23 de diciembre de 1974—, en un mismo sitio—Río Piedras—, y se anunciaba para todas ellas la misma prueba testifical.

Alegan los apelantes que de haberse celebrado una nueva lectura de acusaciones hubiesen podido, en vista de la prueba, solicitar juicio por jurado, a que habían renunciado. Eso es correcto. Pero olvidan que ello no aplicaría para la acusación por asesinato en primer grado, que es el más grave de todos los delitos que se les imputaban. Ellos renunciaron expresa y válidamente a juicio por jurado frente a la acusación en-

---

"(d) Incongruencia entre las alegaciones y la prueba. El tribunal podrá permitir enmiendas a la acusación, a la denuncia o a un escrito de especificaciones en cualquier momento antes de la convicción o absolución del acusado, en caso de que hubiere incongruencia entre estas alegaciones y la prueba. La incongruencia o desacuerdo entre las alegaciones y la prueba no será fundamento para la absolución del acusado; pero el tribunal, siempre que el acusado no se opusiere, deberá posponer el juicio si es de opinión que los derechos sustanciales del acusado se han perjudicado, para celebrarlo ante otro jurado o ante el mismo tribunal si el juicio no fuere por jurado, y según el tribunal determinare.

"Si la incongruencia o desacuerdo es de tal naturaleza que la prueba estableciere un delito distinto del imputado, no incluido en éste, o estableciere la comisión de un delito fuera de la competencia del tribunal, se deberá disolver el jurado y se sobreseerá el proceso."

(³) En corte abierta el 2 de julio el tribunal anunció su resolución en que desestimaba los planteamientos, y decretó un receso de tres semanas para que los acusados recurrieran a este Tribunal si lo deseaban, lo cual hicieron, y no fue hasta el 22 de septiembre que se reanudó la vista de los casos, luego de nuestra resolución de 3 de septiembre en que nos negamos a expedir auto de *certiorari*.

mendada por el asesinato, en que se alegaron por vía de enmienda los mismos hechos que se adicionaron a las otras acusaciones para ajustarlas a la prueba. Parece fútil que estén dispuestos a consentir ser juzgados por el juez en la causa por asesinato y por jurado en los casos por ataque para cometer asesinato, robo, e infracción del Art. 8 de la Ley de Armas. El apuntamiento de error es evidentemente inmeritorio. Conceder un nuevo acto de lectura de acusaciones hubiese sido en estos casos contrario al principio enunciado en *Pueblo* v. *González*, 97 D.P.R. 541 (1969), de interpretar la Regla 38 para asegurar, además de una tramitación justa y de evitar dilaciones y gastos injustificados, lograr liberalidad y flexibilidad en los procedimientos criminales.

■ Los dos apuntamientos finales van dirigidos a la prueba. Se pretende separar los sucesos ocurridos aquella tarde de víspera de Nochebuena del 1974 en dos episodios separados: primero, el robo, y segundo, el uso del revólver para matar y sus resultados. En cuanto al primero, pretenden los apelantes que no se probó el designio común de ellos y de Abelardo de robar. Pretenden que se vieron precisados a despojar a Luis y a Doris de sus pertenencias porque se los ordenó Abelardo a punta de revólver. Para eso, debemos ignorar que salieron juntos de entre los matorrales, que mientras Abelardo se acercó a Luis por el lado del volante los apelantes hicieron lo mismo respecto a Doris por el otro lado, y bastó la indicación de Abelardo para proceder a quitarles a sus víctimas el reloj y la billetera. Los apelantes parece que nos suponen ser muy cándidos. El designio común no tiene que probarse con prueba directa. Las actuaciones de los tres confirman la existencia del plan de robar, como robaron, a sus víctimas.

■ La aplicación del Art. 201 del Código Penal vigente cuando ocurrieron los hechos delictuosos que aquí nos ocupan —33 L.P.R.A. sec. 633 (⁴)—que estatuye en esta jurisdicción

---

(⁴) "Todo asesinato perpetrado por medio de veneno, acecho, o tortura, y toda clase de muerte alevosa, deliberada y premeditada, o cometida al

la llamada *felony murder rule* es de inescapable aplicación a los apelantes. El incidente de los disparos fue en este caso parte inseparable de todo el suceso que se inició cuando los tres sujetos decidieron salir del lugar entre malezas desde el cual acechaban a la pareja de novios, y armados los tres del revólver que uno portaba, les robaron. Matar a Luis y a Doris—liquidarlos, en palabras de Abelardo—era parte del robo perpetrado, pues fue la manera escogida para silenciarlos y proteger su identidad. La mirada de Abelardo a sus compinches al decir que había que liquidar a la víctima no halló repulsa en los apelantes. Salvo un tímido pedido del coacusado Cancel a Abelardo de que dejara a la muchacha quieta, héchole cuando ya Abelardo había ultimado a Luis, había herido a Doris y se disponía a saciar sus instintos animales en aquella joven ya herida e indefensa, no hubo la más leve conducta de los apelantes que pueda interpretarse como que se desligaron del propósito inicial y para escapar a sus consecuencias. De hecho, se marcharon los tres juntos, no por haber desistido sus propósitos y sí ante el temor de ser sorprendidos por los ocupantes del auto que se acercaba.

Creemos que no hay que decir más. *Las sentencias deberán ser confirmadas.*

El Juez Asociado Señor Rigau no intervino.

---

perpetrarse o intentarse algún incendio de morada, rapto, robo, asalto, o mutilación constituye asesinato de primer grado; siendo de segundo grado todos los demás."