EL PUEBLO DE PUERTO RICO, apelado, *v.* JORGE L. PAGÁN SANTIAGO y NEREIDA ORTIZ SÁNCHEZ, acusados y apelantes.

*Números:* CR-88-66 *Resueltos:* 20 de mayo de 1992
CR-88-77

---

472

*Víctor Ramos Acevedo,* abogado del apelante; *Jorge E. Pérez Díaz, Procurador General, Norma Cotti Cruz, Subprocuradora General,* y *Blanca A. Díaz Segarra, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

El Jueves 8 de octubre de 1987 el agente Félix Bauzó Carrasquillo recibió una llamada telefónica de una mujer, quien prefirió mantenerse en el anonimato. Ésta le informó al agente Bauzó que en la residencia de "Georgie El Grande" se ocultaba cierto cargamento de droga. Luego de describir la localización de la residencia, se comprometió a llamar nuevamente en dos (2) días, o sea, el sábado 10 de octubre. En efecto, la confidente llamó el sábado siguiente a la hora acordada. En su segunda llamada, ésta informó al agente Bauzó sobre una transacción que se realizaría esa misma tarde en la referida residencia. En esta ocasión informó la hora, el número de personas involucradas y describió el vehículo que sería utilizado.

Luego de consultar con su supervisor, el agente Bauzó estableció vigilancia frente a la residencia del apelante Pagán Santiago. Su supervisor y un grupo de agentes se ubicaron en las cercanías de la urbanización. La vigilancia comenzó aproximadamente a las 4:00 P.M. Una hora más tarde llegó el vehículo que la confidente había descrito. La descripción del vehículo y el número de personas que viajaban en él coincidieron con la información suministrada. Acto seguido un hombre, quien luego fue identificado como el apelante Jorge L. Pagán Santiago, salió de la referida residencia. Vestía pantalones cortos blancos y camisa negra de mangas largas. Éste, luego de saludar a los pasajeros del vehículo, sacó de una cartera de mano negra una bolsa plástica transparente que contenía un polvo blanco.

La entregó a uno de los individuos que viajaba en el vehículo, quien, de la cartera de una de las mujeres, sacó dinero y lo entregó a Pagán Santiago. Acto seguido el vehículo se retiró del lugar y Pagán Santiago comenzó a caminar hacia su residencia. En ese momento el agente Bauzó se percató de que un segundo individuo, identificado luego como el apelante Rafael Santiago Martínez, estaba mirando desde el segundo piso de la casa y lo había descubierto. Éste le gritó a Pagán Santiago a la vez que señalaba hacia el lugar donde se hallaba el agente Bauzó. Al percatarse de la presencia del agente, el apelante Pagán Santiago corrió hacia el interior de su casa.

Inmediatamente el agente Bauzó se retiró del lugar de los hechos. Al salir de la urbanización alcanzó el vehículo que segundos antes había estado en frente de la casa de Pagán Santiago. El agente notificó por radio a su supervisor, quien se encontraba cerca del lugar, y solicitó que arrestaran a los ocupantes del vehículo. Posteriormente el agente Bauzó se enteró de que, en efecto, el vehículo había sido intervenido y arrestados sus ocupantes, habiéndoseles ocupado aproximadamente dos (2) onzas de cocaína.

Ese mismo día, como a las 7:00 de la noche, la informante llamó por tercera ocasión. Esta vez informó que en la residencia quedaba todavía una cantidad de drogas y armas de fuego, y que probablemente "Georgie El Grande" se había dado cuenta de la presencia de la Policía en los alrededores de su residencia, por lo que trataría de mobilizar el millonario cargamento ilegal que guardaba en su propiedad.

Con la información suministrada por dicha confidente anónima, corroborada sustancialmente por la observación directa que de la narrada transacción hiciera el agente Bauzó y por la ocupación de dos (2) onzas de cocaína a los compradores de ésta después de haber sido arrestados, los agentes comienzan el trámite de conseguir la autorización

para un allanamiento. La orden fue obtenida el domingo 11 de octubre, a las 11:00 de la mañana.

Un contingente de dieciocho (18) agentes ejecutaron dicha orden de allanamiento de la forma siguiente:

Varios agentes brincaron por un lado del portón eléctrico que daba acceso a los terrenos aledaños a la residencia y se acercaron a ella. Un joven descrito con barba y sin camisa que se encontraba en tales terrenos los vio y gritó: "¡La Policía!", a la vez que corría hacia la casa, siendo perseguido y alcanzado por los agentes. Otro grupo de agentes entró al interior de la residencia cuyo portón se encontraba abierto. Allí encontraron a los apelantes Rafael Santiago Martínez, Milagros Figueroa y a tres (3) menores de edad sentados en un sofá viendo televisión. Luego de identificarse y de preguntar por el dueño de la casa, el agente Bauzó dejó a varios miembros del grupo custodiando a Santiago Martínez, a Figueroa y a los tres (3) menores, y se dirigió al área de los dormitorios. Allí percibió un fuerte olor a marihuana. En un dormitorio observó un rifle recortado y en un baño vio una balanza y al lado de ésta varios sacos de marihuana. También observó revólveres, rifles, municiones y metralletas, colocadas a simple vista sobre mesas, camas y sillas. Regresa a la sala y pone bajo arresto a las personas que allí se encontraban custodiadas. Sube a la segunda planta, donde encontró un dormitorio amplio. En la cama se encontraban durmiendo los apelantes Pagán Santiago y Nereida Ortiz Sánchez. Los despertó, les entregó la orden de allanamiento y les cuestionó sobre sus licencias para portar todas aquellas armas. Al contestar en la negativa, fueron arrestados y les fueron leídos sus derechos y advertencias de rigor. En la habitación se ocupó parafernalia para el trasiego de drogas, cocaína, marihuana, dinero en efectivo y varias armas de fuego. Se tomaron fotos de la residencia así como de la mercancía encontrada en ella.

I

Por los hechos expuestos, el Ministerio Público acusó a los cuatro (4) apelantes mencionados de infracción al Art. 401 de la Ley de Sustancias Controladas de Puerto Rico (en adelante Ley de Sustancias Controladas), 24 L.P.R.A. sec. 2401, e infracciones a los Arts. 4, 5, 6 y 11 de la Ley de Armas de Puerto Rico (en adelante Ley de Armas), 25 L.P.R.A. secs. 414, 415, 416 y 421.([1])

En el acto de la vista preliminar celebrada por los delitos graves de infracción al Art. 401 de la Ley de Sustancias Controladas, *supra*, y de infracción al Art. 11 de la Ley de Armas, *supra*, el magistrado instructor determinó que no existía causa probable para acusar a los apelantes Milagros Figueroa y Rafael Santiago Martínez. En alzada, igual dictamen hizo el Juez Superior que actuó como magistrado en la nueva vista preliminar celebrada por tales delitos. En vista de ello, tales apelantes fueron acusados en el Tribunal Superior por los delitos menos graves de infracción a los Art. 4 y 6 de la Ley de Armas, *supra*.

Celebrado el juicio por tribunal de derecho, los acusados fueron declarados culpables por los siguientes delitos: Jorge L. Pagán Santiago y Nereida Ortiz Sánchez, dos (2) cargos, cada uno, por infracción al Art. 401 de la Ley de Sustancias Controladas, *supra*, e infracciones a los Arts. 5, 6 y 11 de la Ley de Armas, *supra*. Milagros Figueroa y Rafael Santiago Martínez fueron encontrados culpables por cuatro (4) cargos cada uno, por infracción al Art. 6 de la Ley de Armas, *supra*.

Posteriormente se sentenció a Jorge L. Pagán Santiago a cumplir penas de quince (15) años de reclusión en cada caso por infracción al Art. 401 de la Ley de Sustancias Con-

---

([1]) Además, se presentaron acusaciones contra cada uno de los acusados apelantes por el recibo y la transportación de bienes apropiados ilegalmente. Art. 168 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4274. Todos fueron exonerados de tal delito en el acto de la vista preliminar.

troladas, *supra*; diez (10) años en cada caso por infracción al Art. 5 de la Ley de Armas, *supra*; cinco (5) años en cada caso por infracción al Art. 11 de la Ley de Armas, *supra*, y un (1) año por infracción al Art. 6 de dicha ley, *supra*. Nereida Ortiz Sánchez fue sentenciada a cumplir penas de doce (12) años en cada caso por infracción al Art. 401 de la Ley de Sustancias Controladas, *supra*; diez (10) años en cada caso de infracción al Art. 5 de la Ley de Armas, *supra*; cinco (5) años en cada caso por infracción al Art. 11 de la Ley de Armas, *supra*, y un (1) año en cada caso por infracción al Art. 6 de dicha ley, *supra*.

Por otro lado, Milagros Figueroa y Rafael Santiago Martínez fueron sentenciados a cumplir cuatro (4) años de prisión por los cuatro (4) cargos de infracción al Art. 6 de la Ley de Armas, *supra*.

Inconformes con las sentencias impuestas, los acusados recurren ante nos mediante recursos de apelación, alegando la comisión de siete (7) errores. Estos recursos fueron posteriormente consolidados y, estando en posición de hacerlo, resolvemos.

## II

En su primer señalamiento de error los apelantes Figueroa, Santiago Martínez y Ortiz Sánchez cuestionan la suficiencia de la prueba en cuanto a la intención criminal requerida para la comisión del delito. Se basan en la premisa de que el "mero hecho de estar físicamente en un lugar y/o establecimiento no te culpa [sic] de acciones u omisiones ajenas". Caso Núm. CR-88-66, Alegato de los apelantes, pág. 23. La apelante Ortiz Sánchez alega que "tampoco se estableció fuera de toda duda razonable que las armas y las sustancias controladas" (íd.) fueran de su propiedad.

La prueba presentada y creída por el tribunal de instancia estableció que al momento de llevarse a cabo el allana-

miento en la residencia del matrimonio compuesto por los apelantes Pagán Santiago y Nereida Ortiz, los señores Rafael Santiago Martínez y Milagros Figueroa estaban en la sala de dicha residencia. E.N.P. pág. 17. Dentro de ésta había armas y sustancias controladas, a simple vista, sobre camas, sillas y mesas. Íd. El agente Félix Bauzó Carrasquillo identificó al Sr. Rafael Santiago Martínez como la persona que el día antes le gritó a Pagán Santiago (íd., pág. 15) para prevenirlo de la presencia de los agentes.

Varios de los testigos de defensa atestaron conocer a los apelantes Santiago Martínez y Figueroa, y haberlos visto en la casa del señor Pagán Santiago en varias ocasiones antes del día del allanamiento.

Con relación a la apelante Nereida Ortiz Sánchez, esposa del apelante Jorge L. Pagán Santiago, la prueba demostró que, al momento del allanamiento, ésta se encontraba acostada en la cama del matrimonio junto a su esposo. E.N.P., pág. 17. Había armas, drogas y parafernalia para el trasiego de drogas en la habitación, a simple vista. Dos (2) de los envases que contenían cocaína, encontrados en la habitación matrimonial, tenían cinta adhesiva en la que se había escrito en uno de ellos "para mi uso" y en el otro "para uso del cliente". Íd., pág. 18. También surge de la prueba que se percibía un fuerte olor a marihuana en la casa. Íd., pág. 17.

La "mera presencia" de una persona durante la comisión de un delito no es suficiente, por sí sola, para sostener una convicción en contra de ella por tal delito. Sin embargo, este hecho puede considerarse conjuntamente con otras circunstancias que rodean el hecho delictivo a los fines de fijar la responsabilidad criminal. No es indispensable, pues, que los acusados ejecuten personalmente el acto delictivo. Su presencia en el lugar de los hechos es indicio de su responsabilidad como coautores siempre que ésta pueda establecerse además de otros actos anteriores o

como el resultado de una conspiración o de un designio común en que participaron. *Pueblo v. Aponte González*, 83 D.P.R. 511, 519–520 (1961); *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139, 145–146 (1985).

El elemento de "concierto y común acuerdo o designio común", como cualquier otro hecho en controversia, puede ser establecido mediante prueba indirecta o circunstancial, ya que la evidencia circunstancial es intrínsecamente igual que la evidencia directa. Regla 10(H) de Evidencia, 32 L.P.R.A. Ap. IV; *Pueblo v. Cancel Peraza*, 106 D.P.R. 28, 33 (1977); *Pueblo v. Salgado Velázquez*, 93 D.P.R. 380, 383 (1966).

Así se estableció en el presente caso. Las armas y las drogas fueron encontradas dentro de la residencia de Pagán Santiago, a simple vista, en la cual convivía con su esposa, la apelante Nereida Ortiz Sánchez. Al momento del allanamiento se percibía un fuerte olor a marihuana. Si bien la evidencia no estableció de una manera directa que los coacusados Santiago Martínez y Milagros Figueroa vivían en tal residencia, de haber estado allí de visita, ésta no era una casual o incidental. Se desfiló prueba a los efectos de que visitaban la casa con mucha frecuencia. El día del allanamiento, a las 11:00 de la mañana, mientras los esposos Pagán Ortiz aún dormían, ellos, junto a los hijos de éstos, veían televisión. Es razonable inferir, entonces, que estaban allí como parte del grupo que llevaba a cabo la actividad ilícita. Su conducta no era la de unos visitantes comunes y corrientes. Muy por el contrario, parecían estar en su casa, en confianza, participando y beneficiándose de la actividad ilícita que se llevaba a cabo en la residencia en cuestión.

Por otro lado, que el coacusado Santiago Martínez tenía conocimiento de dicha actividad ilícita, fue demostrado al establecerse que el día anterior éste dio aviso a Pagán Santiago de la presencia de la Policía, al percatarse de que

estaban siendo vigilados por ésta al momento en que se llevaba a cabo una transacción ilegal de venta de cocaína. Dicha venta fue posteriormente corroborada con el arresto de los compradores.

■ Aunque la culpabilidad de un acusado tiene que ser probada mediante evidencia que establezca todos los elementos del delito más allá de duda razonable, ello no significa que toda duda posible, especulativa o imaginaria, tenga que ser destruida a los fines de establecer la culpabilidad del acusado con certeza matemática. Sólo se exige que la prueba establezca aquella certeza moral que convence, que dirige la inteligencia y satisface la razón. *Pueblo v. Bigio Pastrana*, 116 D.P.R. 748, 760–761 (1985).

La prueba desfilada en estos casos demostró, más allá de toda duda razonable, la culpabilidad de los acusados apelantes, por lo que el primer error señalado no fue cometido.

### III

Bajo el segundo señalamiento de error los apelantes atacan la suficiencia de la prueba con énfasis en la credibilidad de los testigos de cargo.

Para ello señalan varios errores en la declaración jurada del agente Bauzó Carrasquillo en cuanto a las fechas en que se cometieron los hechos. El agente Bauzó, en su declaración jurada, comienza señalando el jueves 8 de octubre de 1987 como el día en que recibe la primera llamada. Sin embargo, cuando luego se refiere al sábado siguiente, día en que recibió la segunda y tercera llamadas, se refiere al *sábado 11*, cuando lo correcto hubiese sido *sábado 10*. También se equivoca al referirse en su declaración jurada al *viernes 10* en lugar de *viernes 9*. Este tipo de error es, a la luz de los hechos de este caso, uno de índole insustancial cuya comisión no acarrea la violación del de-

bido proceso de ley, como señalan los apelantes. Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III. *Pueblo v. Díaz Ríos*, 107 D.P.R. 140, 141 (1978).

■ Los apelantes también cuestionan la credibilidad de algunos testigos por razón de ciertas discrepancias al referirse a la presencia de unas cámaras, en lugar de unos focos, en el portón de la residencia objeto del allanamiento, el millaje recorrido por los autos oficiales utilizados durante la intervención de los agentes en este caso y sobre la persona que recibe las llamadas telefónicas de la confidente anónima en el Cuartel de la Policía. Tales discrepancias fueron explicadas por cada uno de los testigos involucrados. Sus testimonios fueron objeto de escrutinio por el tribunal de instancia, quien adjudicó su credibilidad. Tal determinación en ausencia de prejuicio, parcialidad, pasión o error manifiesto merece nuestra deferencia. En ausencia de dichos elementos, no hay razón para que este Tribunal intervenga con la adjudicación de credibilidad que hizo dicho tribunal. *Pueblo v. Rivero, Lugo y Almodóvar*, 121 D.P.R. 454 (1988).

Por último, los apelantes traen a nuestra atención la supuesta fabricación de prueba por parte de algunos agentes que testificaron en el proceso. A los fines de aquilatar dicho señalamiento en su justa perspectiva, reproducimos a continuación las expresiones del juez de instancia sobre este particular:

En la declaración jurada por escrito que da base a la Orden de Allanamiento, así como en la declaración en corte durante la vista, el Agente Bauzó se refiere a la residencia A–18. En ningún sitio por escrito indica que en el área de los zafacones hubiera un rótulo con la inscripción A–18. En el contrainterrogatorio, al preguntársele de dónde sacó las colindancias indicó: "Por lado derecho colinda con A–17.....por la forma en que va la urbanización y por pregunta que hice a unos muchachos, dijeron que no brincaban los números, que iban en orden".

La descripción de la propiedad que su dueña considera "Buena". Esta tiene un portón de rejas negras y en cada una de

las esquinas del portón hay unas murallas y encima de éstas hay una cámara, en total en el portón hay dos (2) cámaras; la residencia es de concreto, pintada de blanco con tejas anaranjadas y frente semi-redondo; ésta presenta arcos en la parte del frente de la residencia y los mismos tienen rejas. Sobre la residencia antes mencionada tiene otra residencia construída en madera y zinc, y al frente de la segunda planta hay otra cámara más grande color blanca y probablemente ésta sea giratoria". [sic]

Hasta el momento en que aparece la licencia del vehículo Toyota propiedad del acusado Jorge L. Pagán, con referencia a la dirección como A–17, La Esmeralda, Cidra, nadie se había percatado de que aquella residencia no fuera la A–18. Sencillamente no había rótulo alguno que lo indicara. Es la única conclusión lógica a que puede llegarse luego de estudiar las fotografías admitidas en evidencia. Las fotos de la entrada de la residencia muestran un portón cerrado, y agua fluyendo en la entrada como si fuera un manantial. El rótulo en madera colgando de finos alambres y otra madera tras el muro haciendo contrapeso es muy conveniente. No hay porqué poner en duda el testimonio de los testigos de defensa, vecinos y comerciantes así como el doctor Ramón Andrés Meléndez Martí, amigo de los acusados que juran que nunca han visto ese rótulo allí. Así como también que no se ven rótulos en la urbanización. Sólo señalan dos rótulos, uno de ellos A–19, que aparenta colindar con la residencia allanada.

Dicho rótulo A-18 lo más probable fue puesto allí con el único propósito de fotografiarlo el 24 de octubre de 1987.

En la declaración jurada por escrito del 21 de octubre de 1987, a las 3:00 p.m., decl. #78 ante un fiscal (firma ilegible), el Agte. Félix Bauzó se refiere a la residencia como A–17 y en ningún sitio menciona que a pesar de ello está rotulada A-18.

De haber sido tomadas las fotografías el 11 de octubre de 1987 mientras se efectuaba el allanamiento, el portón debía aparecer abierto, y el lugar seco, no con un correntón de agua. ¿La fabricación de prueba que se desprende de estos hechos, con posterioridad a la ejecución del allanamiento, debe beneficiar a unos comerciantes en drogas narcóticas y armas de fuego? ¿Cambiará la situación si resultara ahora que el verdadero nombre del acusado es otro?

Entendemos que NO. La descripción de la propiedad fue suficientemente clara como para dirigir correctamente a los agentes a la residencia indicada la cual no tenía rótulo alguno en ese momento.

Los responsables de la fabricación y perjurios posteriores,

para acomodar el testimonio a hechos que vinieron en conocimiento después de haber actuado correctamente, deben *responder* por ello, como deben responder los acusados por sus actuaciones delictivas. (Énfasis en el original.) Caso Núm. CR-88-66, Resolución de 16 de junio de 1988.

■ El que un testigo falte a la verdad en una parte de su testimonio no conlleva que necesariamente deba descartarse el resto de la declaración. *Pueblo v. López Rivera*, 102 D.P.R. 359 (1974); *Pueblo v. Espinet Pagán*, 112 D.P.R. 531 (1982). La máxima *falsus in uno, falsus in omnibus* no autoriza a rechazar toda declaración de un testigo porque se haya contradicho o faltara a la verdad en parte de su testimonio. *Pueblo v. Méndez Feliciano*, 90 D.P.R. 449 (1964). Aquilatado como lo fue, el testimonio al cual se refiere este señalamiento —por el juez de instancia a la luz de dichos principios— la apreciación que de tal testimonio hiciera dicho magistrado respecto a su credibilidad merece nuestra deferencia, por lo que no habremos de intervenir con dicha apreciación. *Pueblo v. Rivero, Lugo y Almodóvar*, supra. El error no fue cometido.

## IV

A través de los señalamientos tercero, cuarto y quinto, los apelantes cuestionan la legalidad de la orden de allanamiento dictada contra la residencia de Pagán Santiago.

■ Al pasar juicio sobre los hechos presentes en un caso a los fines de determinar si éstos justifican la expedición de una orden de allanamiento, debemos siempre aplicar como criterio rector el de la razonabilidad. Esto es, se justifica la expedición de una orden de allanamiento cuando los hechos son de tal naturaleza que lleven a una persona *prudente y razonable* a creer que se ha cometido la ofensa imputada. *Pueblo v. Tribunal Superior*, 91 D.P.R. 19 (1964). Allí dijimos: " 'Al determinar que es causa probable

no estamos llamados a establecer si la ofensa que se imputa fue verdaderamente cometida. Nos concierne sólo la cuestión de si el deponente tuvo base razonable, al momento de prestar su declaración jurada y haberse librado la orden de registro, para creer que se estaba violando la ley en el lugar a ser allanado; y si los hechos aparentes que se desprenden de la declaración jurada son de tal naturaleza que una persona prudente y razonable pudiera creer que se ha cometido la ofensa imputada, hay la causa probable que justifica la expedición de una orden.' "

En el presente caso, la orden de allanamiento expedida se fundamentó en la declaración jurada del agente, Félix Bauzó Carrasquillo, quien plasmó en ésta el conocimiento obtenido a través de tres (3) acertadas confidencias de una misma persona e información que le constaba de su propio conocimiento, producto de su investigación y observación como agente del orden público.

■ Nos tropezamos, pues, como en innumerables ocasiones anteriores, con la expedición de una orden de allanamiento fundamentada en la declaración jurada de un agente del orden público, fundamentada a su vez en confidencias y en la observación directa del agente declarante. Hace ya muchos años que en *Pueblo v. Díaz Díaz*, 106 D.P.R. 348 (1977), establecimos los criterios para determinar cuándo es que una confidencia justifica la expedición de una orden de allanamiento. Estos criterios son los siguientes:

1. Que el confidente previamente ha suministrado información correcta.
2. Que la confidencia conduce hacia el criminal en términos de lugar y tiempo.
3. Que la confidencia ha sido corroborada por observaciones del agente o por información proveniente de otras fuentes.
4. Que la corroboración se relaciona con actos delictivos cometidos o en proceso de cometerse.

Siguiendo este esquema establecido en *Pueblo v. Díaz Díaz*, supra, es razonable concluir que la confidencia hecha en el presente caso fue suficiente para la válida expedición de la orden de allanamiento.

Las confidencias recibidas en el presente caso, aunque de parte de una confidente anónima, fueron convalidadas mediante la observación directa del agente Bauzó. No se trata de una orden de allanamiento emitida en el vacío, sino de una reforzada por los resultados del esfuerzo de un agente del orden público. Una confidencia hecha por teléfono a un miembro del orden público, corroborada por observación directa de dicho agente o de uno de sus compañeros —quien luego vierte en una declaración jurada tal conocimiento— es suficiente para que, a la luz de las circunstancias de este caso, pueda un magistrado emitir válidamente una orden de allanamiento después de un examen diligente de dicha declaración y luego de haber quedado convencido de que existe causa probable para ello a la luz de los criterios expuestos anteriormente. *Pueblo v. Tribunal Superior*, supra; *Pueblo v. Díaz Díaz*, supra.

Es cierto que en la orden se señaló incorrectamente el número de la residencia. En lugar de A-17 se indicó que el número era A-18. Este error, a la luz de los hechos ante nos, fue subsanado por la descripción acertada que se hiciera de la casa.[2] Tomando en cuenta todos los detalles

---

[2] La propiedad fue descrita de la manera siguiente:

"...la residencia A-18, es una residencia grande, la cual tiene portones electrónicos y a cada lado de los portones tiene una cámara, de ese portón a la residencia hay un camino en cemento y encima de esta hay otra residencia en madera y zinc, se refiere al techo de la primera planta hay otra cámara apuntando hacia el portón principal de la residencia...." Caso Núm. CR-88-66, Alegato del Procurador General, pág. 33.

" 'Residencia ubicada en la Urb. La Esmeralda A-18, Caguas, Puerto Rico, esta tiene un portón de rejas negras y en cada una de las esquinas del portón hay dos (2) cámaras, la residencia es de concreto, pintada de blanco con tejas anaranjadas y frente semi-redondo, ésta presenta arcos en la parte del frente de la residencia y los mismos tienen rejas. Sobre la residencia antes mencionada tiene otra residencia construída en madera y zinc, y al frente de la segunda planta hay otra cámara más grande color blanca y probablemente esta sea giratoria.'

implicados no podemos sostener el error alegado. Véase 1 *Ringel, Search and Seizures, Arrests and Confessions* Sec. 5.5(a), pág. 5-20 (1986).

V

En su sexto señalamiento de error, los apelantes atacan la actuación del tribunal de instancia al aceptar en substitución de la orden de allanamiento original, una copia de ésta sin estar debidamente certificada y sin cumplir con lo requerido por la Regla 70 de Evidencia, 32 L.P.R.A. Ap. IV. No tienen razón.

Según determinado por la sala sentenciadora, el documento original se extravió sin que haya mediado mala fe, presentándose en su lugar la copia en duplicado que había sido entregada al apelante Pagán Santiago el día en que tal copia fue diligenciada. Además, se unió al expediente del caso la copia, también en duplicado, que poseía el Fiscal, la cual fue certificada por el juez que expidió la orden, indicando éste que tal copia correspondía al original "conforme a su mejor recuerdo". El juez ante quien se diligenció bajo juramento el inventario, reconoció su firma y él corroboró el número del afidávit.

■ Por otro lado, la Regla 73 de Evidencia, 32 L.P.R.A. Ap. IV, dispone que un duplicado es tan admisible como el original a no ser que surja una genuina controversia en torno a la autenticidad del original. E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1986, Vol. I, págs. 447–469.

En este caso la autenticidad del documento original no fue objeto de controversia, por lo que su duplicado fue co-

---

"*Colindancia*: Por el lado derecho colinda con la residencia A-17, la cual tiene un portón de rejas color negra y varias palmas y el camino no está pavimentado. Por el lado izquierdo colinda con la residencia A-19, por el frente colinda con la Calle Principal de la Urb. La Esmeralda de Caguas." (Énfasis en el original.) Caso Núm. CR-88-66, *supra*.

rrectamente admitido. Por lo antes señalado y visto, la diligencia llevada a cabo, creída y plasmada por la sala sentenciadora en su resolución, es forzoso concluir que el error no fue cometido.

## VI

Discutiremos someramente los señalamientos de error séptimo, octavo y noveno.([3])

 Mediante el séptimo señalamiento de error se imputa al tribunal de instancia haber errado al no acceder a la solicitud de los apelantes de que se celebrara una inspección ocular de la residencia donde fueron éstos arrestados. Tal error no fue cometido. Dicho tribunal correctamente concluyó que la inspección solicitada era innecesaria y nada aportaba a la pronta solución del caso. Este Foro se ha manifestado repetidamente al efecto de que la denegación de una inspección ocular no constituye un abuso de discreción cuando su valor probatorio nada añade al proceso y, en cambio, resulta en una dilación inconveniente e innecesaria. *Pueblo v. Burgos Hernández*, 113 D.P.R. 834 (1983); *Pueblo v. Pagán Díaz*, 111 D.P.R. 608 (1981). En el presente caso, además de los testimonios de varias personas en relación con la descripción y ubicación de tal residencia, fueron admitidas múltiples fotografías de ésta, lo que hacía innecesaria la inspección solicitada.

---

([3]) "G. Erró el Tribunal de Instancia al declarar No Ha Lugar una solicitud sobre inspección ocular de la residencia allanada y sus alrededores a pesar de existir una controversia material y real entre lo declarado por el agente que solicitó la orden de allanamiento y la descripción real y verdadera de la propiedad.

"H. Erró el Tribunal de Instancia al declarar No Ha Lugar una Moción Bajo la Regla 64(p) y otra bajo la Regla 64(f) de Procedimiento Criminal.

"I. Erró el Honorable Tribunal al sentenciar al apelante Jorge L. Pagán Santiago a cumplir penas consecutivas, sin prueba alguna que justificara la imposición de dicha pena, tratándose de un primer ofensor en contravención a la filosofía de carácter rehabilitadora de la Ley Penal." Caso Núm. CR-88-66, Alegato de los apelantes, pág. 21.

En el octavo señalamiento, los apelantes Milagros Figueroa y Rafael Santiago Martínez sostienen que la determinación de *no causa* en vista preliminar por los delitos graves que originalmente les fueron imputados junto a los otros dos coacusados, constituye cosa juzgada y es impedimento para que se ventilen en un segundo proceso, aun cuando se trate de delitos distintos, los hechos que se dilucidaron y se resolvieron en el primer procedimiento y que son decisivos para este segundo proceso. Apoyan esta contención en el caso *Pueblo v. Ortiz Marrero*, 106 D.P.R. 140 (1977). No tienen razón.

■ En *Pueblo v. Ortiz Marrero*, supra, resolvimos que la determinación del Tribunal de Distrito —*después de la celebración del juicio en sus méritos que decretaba la supresión de cierta evidencia* y absolvía los allí acusados— operaba como un impedimento colateral por sentencia en relación con la acusación por un delito distinto pendiente ante el Tribunal Superior, cuya acusación se produjo como resultado de otra evidencia delictiva que, aunque distinta, se ocupó en el mismo evento y de la misma forma no susceptible de fraccionamiento fáctico, en que se ocupó la evidencia suprimida por el Tribunal de Distrito. Fundamentamos nuestra decisión en el mencionado caso en la circunstancia —ausente en el presente— de que los hechos, mediante los cuales fue ocupada la evidencia para sostener ambas infracciones, fueron declarados contrarios a nuestro ordenamiento legal en virtud de una resolución *final y firme* del Tribunal de Distrito emitida con anterioridad a que se ventilara la acusación pendiente ante el Tribunal Superior.

Resalta a la vista la diferencia entre el citado caso de *Pueblo v. Ortiz Marrero* y el presente. En aquél se ventiló el juicio en los méritos, luego de lo cual se acogió el planteamiento sobre supresión de evidencia, por lo que se produjo una *sentencia final y firme* de parte del Tribunal de

Distrito. En el de autos, todo lo que se celebró fue una vista preliminar donde se determinó que no existía causa probable para enjuiciar a los apelantes por los delitos graves que les habían sido imputados. No habiéndose ventilado el caso en sus méritos sobre todo lo concerniente a la admisibilidad de evidencia y a la coautoría de los apelantes con Pagán Santiago y su esposa Nereida Ortiz Sánchez, en relación con los delitos *menos graves*, no existe una sentencia final y firme que active la doctrina de impedimento colateral por sentencia, que recoge la norma de que una sentencia resulta concluyente entre las mismas partes cuando se trata y conlleva la relitigación en un caso posterior de las cuestiones de hecho esenciales, adjudicadas y determinadas previamente en tal sentencia. Véase *Pueblo v. Ortiz Marrero*, supra, y casos allí citados.

 Finalmente, a través del último de los señalamientos se alega que erró el tribunal sentenciador al condenar al apelante Jorge L. Pagán Santiago a cumplir unas penas consecutivas sin prueba que justificara la imposición de tales condenas. Es evidente la frivolidad de dicho señalamiento. Reiteradamente hemos sostenido que no constituye un castigo cruel e inusitado el sentenciar a un acusado a cumplir consecutivamente varias penas de encarcelamiento cuando la naturaleza de los delitos cometidos así lo justifican y las penas decretadas están dentro de los límites fijados por el estatuto. *Pueblo v. Burgos Hernández*, supra. La determinación del modo de cumplir, el acusado, con los términos de prisión —si concurrente o consecutivamente— descansa en la sana discreción del tribunal, con la cual no habremos de intervenir en ausencia de pasión, prejuicio, parcialidad o mal juicio. *Pueblo v. González*, 97 D.P.R. 541 (1969); *Pueblo v. Matos Pretto*, 93 D.P.R. 113 (1966).

No habiéndose cometido ninguno de los errores señala-

dos por los apelantes, *se dictará sentencia que confirme todas las sentencias impugnadas por los apelantes.*

El Juez Asociado Señor Rebollo López disintió mediante opinión escrita.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

En ocasiones nos cuestionamos el porqué dedicamos tiempo de nuestro recargado calendario de trabajo para solitariamente disentir de decisiones de este Tribunal, refrendadas por una mayoría absoluta de los integrantes del mismo, en las cuales asumimos posiciones en ciertos casos que resultan ser antipáticos no sólo para la inmensa mayoría de nuestra ciudadanía sino que, inclusive, para nosotros mismos.

La contestación a dicha interrogante resulta ser sorprendentemente sencilla: *el hacerlo es un deber y obligación ineludible del desempeño responsable del cargo que ocupamos*; ello *independientemente* de cualquier otra consideración referente a personas o hechos específicos envueltos en el caso en particular en ese momento ante nuestra consideración.

La decisión mayoritaria emitida por el Tribunal en el presente caso —el cual, no hay duda, es uno sumamente antipático debido a que todo tiende a indicar que los aquí apelantes efectivamente estaban envueltos en el *repugnante* y *canceroso* tráfico ilegal de armas y narcóticos— es un vivo ejemplo de la inaceptable máxima o proposición de que "el fin justifica los medios"; máxima que *nunca* puede servir de fundamento jurídico a una convicción criminal bajo el ordenamiento vigente en nuestro País.

## I

En el presente caso la orden de allanamiento emitida contra la residencia propiedad del matrimonio compuesto por los apelantes Jorge L. Pagán Santiago y Nereida Ortiz Sánchez se obtiene, *principalmente*, a base de la declaración del agente Félix Bauzó Carrasquillo quien declaró, en síntesis y en lo pertinente, que recibió una alegada *confidencia anónima* sobre trasiego de drogas en dicha residencia —la *A-18* de la Urbanización Esmeralda de Caguas, Puerto Rico— y de unas observaciones que éste supuestamente hiciera, durante la "vigilancia" que de la misma llevara a cabo como consecuencia de la confidencia recibida; observaciones que alegadamente corroboraron la información brindada en la mencionada confidencia anónima.

Resulta necesario *enfatizar el hecho de que el agente Bauzó Carrasquillo declaró que, durante la mencionada vigilancia, él pudo observar un letrero frente a la residencia en controversia que leía "A-18" y que, luego de efectuado el allanamiento, él estuvo presente cuando otro agente —de nombre Jaime García Butler— fotografió el frente de la casa del matrimonio apelante, fotografía de la cual surge el referido letrero localizado en el frente de la misma. El agente Bauzó Carrasquillo identificó, durante el proceso celebrado, las referidas fotografías.*

¿Cuál es la importancia de todo esto? *Sencillo.* La residencia allanada *no* es la número A-18 de la Urb. Esmeralda; *la misma es la número A-17.*

¿Cómo se explica, entonces, el testimonio del agente Bauzó Carrasquillo a los efectos de que él vio, con sus propios ojos, un letrero contentivo de "A-18"; que estuvo presente cuando se fotografió dicha casa con el referido letrero, y la identificación que hiciera de dichas fotografías?

Nuevamente, *sencillo.* El agente Bauzó Carrasquillo *mintió* flagrantemente sobre ese hecho; más que mentir, Bauzó Carrasquillo *fabricó* esa prueba. Ello *no* lo afirma-

mos nosotros a nivel apelativo. *Dicha determinación y conclusión la hace el propio juez que presidió los procedimientos a nivel de instancia.*

Conforme, inclusive, surge de la propia Opinión mayoritaria emitida por el Tribunal, el magistrado de instancia *expresamente determinó* que lo del letrero, contentivo de la numeración A-18, frente a la residencia en controversia, y lo de las fotografías demostrativas de ese hecho *habían sido efectivamente una fabricación de los agentes de la Policía.*

Procede, entonces, que uno se pregunte ¿cómo es posible que, estando basado el allanamiento en el testimonio del agente Bauzó Carrasquillo, dicho magistrado emitiera un fallo de culpabilidad contra los apelantes, esto es, le diera crédito a la declaración de dicho agente en lugar de rechazar la misma como falsa y, en consecuencia, suprimir la evidencia ocupada durante el allanamiento efectuado?

Sorprendentemente —y, tenemos que añadir, de la manera más ingenua imaginable— el referido juez contestó dicha interrogante expresando que "unos comerciantes en drogas narcóticas y armas de fuego" *no* se pueden "beneficiar" de la fabricación de prueba, por parte de agentes del orden público, que claramente se desprende de la totalidad de la evidencia que desfilara ante él. *En otras palabras, el "fundamento jurídico" detrás de la determinación, o fallo, de culpabilidad emitido por el tribunal de instancia en el presente caso lo es la antes mencionada máxima de que "el fin justifica los medios utilizados".* Esto es, como en el registro realizado se ocuparon armas y narcóticos —razón por la cual los aquí apelantes, conforme expresa el juez de instancia, son "comerciantes en drogas narcóticas y armas de fuego"— *no* importa que el testimonio del agente que sirviera de base a la expedición de la orden de allanamiento sea o no falso o que dicho agente haya fabricado prueba para sostener el caso. Lo único que importa, en opinión del referido magistrado, es que en el allanamiento

se ocupó material delictivo. *Ciertamente no podemos, como lo hace la mayoría del Tribunal, refrendar dicha posición.*

Sabido es que este Tribunal, *reiteradamente*, ha resuelto que el mero hecho de que un registro y allanamiento rinda frutos criminosos *nunca* puede ser utilizado como fundamento para convalidar la ilegalidad del registro y allanamiento efectuado. *Pueblo v. Barrios*, 72 D.P.R. 171 (1951); *Pueblo v. González Rivera*, 100 D.P.R. 651 (1972); *Pueblo v. Castro Santiago*, 123 D.P.R. 894 (1989).

Si ello fuera de forma contraria, meramente bastaría para validar un registro y allanamiento que el Estado demostrara que ocupó material delictivo en el registro y allanamiento que llevó a cabo. Esto es, *no* tendría el Estado que cumplir con el *mandato constitucional* contenido en la Sec. 10 del Art. II de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, la cual, en lo pertinente, dispone que sólo se expedirán mandamientos autorizando registros, allanamiento o arrestos por autoridad judicial *únicamente* cuando exista causa probable apoyada en juramento o afirmación describiendo el lugar a registrarse y las personas a detenerse o las cosas a ocuparse.

En vista de ese claro y expreso mandato constitucional —y como debería de resultar obvio, de los hechos antes reseñados, para cualquier persona— *las armas y drogas narcóticas ocupadas en la residencia aquí allanada nunca debieron ser admitidas en evidencia.* En primer lugar, y como es de todos conocido, uno de los fundamentos a base de los cuales se puede solicitar, y decretarse, la *supresión* de una evidencia ocupada durante un allanamiento es la insuficiencia de "cualquier declaración jurada que sirvió de base a la expedición de la orden de allanamiento *porque lo afirmado bajo juramento en la declaración es falso, total o parcialmente*". Regla 234(f) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Véase, en adición, *Pueblo v. Bonilla Romero*, 120 D.P.R. 92 (1987).

Como anteriormente señaláramos, el juez de instancia

determinó que era *completamente falso* lo declarado por el agente Bauzó Carrasquillo a los efectos de que durante la vigilancia que él prestara, como consecuencia de la confidencia *anónima* que recibiera, él pudiera haber observado que frente a la residencia en controversia había un letrero que describía la misma como la "A-18" de la Urbanización Esmeralda. La Opinión mayoritaria emitida por el Tribunal, con el objetivo de "salvar" ese obstáculo y poder sostener la legalidad de la orden de allanamiento, *convenientemente* se escuda tras la norma jurisprudencial a los efectos de que el "que un testigo *falte a la verdad* en una parte de su testimonio no conlleva que necesariamente deba descartarse el resto de la declaración. *Pueblo v. López Rivera*, 102 D.P.R. 359 (1974) ...". (Énfasis suplido.) Opinión mayoritaria, pág. 483.

Pero, *es que en el presente caso hay algo más*. En primer lugar, el testimonio falso prestado por el agente, como veremos más adelante, *versa sobre un hecho sustancial*; situación que tiene la consecuencia de *viciar* su restante testimonio respecto a las supuestas observaciones que él alega haber hecho durante la vigilancia realizada. En segundo lugar, el juez de instancia, como indicáramos anteriormente, meramente *no* se limitó a decir que este testigo había "faltado a la verdad" en parte de su testimonio. Dicho magistrado expresamente concluyó que el agente Bauzó Carrasquillo *había "fabricado" prueba*. Procede que nos cuestionemos entonces, si meramente estamos ante un testigo que en algún momento de su testimonio incurre en una contradicción, o que dice una mentirilla, *o, por el contrario, ante un consciente prevaricador que, intencional y bochornosamente, fabrica prueba*.

Debemos, en consecuencia, preguntarnos: *¿merece algún crédito el testimonio de esa persona que, con su conducta ilegal, mancha el honor y la reputación del honroso cuerpo al cual pertenece?* Si el "fin justifica los medios", como *aparentemente* entiende tanto el tribunal de instan-

cia como una mayoría de los integrantes de este Tribunal, *la contestación debe de ser en la afirmativa.* Si, por el contrario, nuestro sistema de justicia es uno de ley y de respeto a la verdad, *entonces la contestación tiene que ser en la negativa.*

*¿Por qué la fabricación de prueba?* La contestación a dicha interrogante nos lleva al *segundo fundamento* en apoyo de nuestra contención *a los efectos de que el material delictivo ocupado en la residencia allanada no era admisible en evidencia*; ello por *dos (2) razones*: porque la orden de allanamiento emitida concedía "discreción" a los agentes para allanar más de una residencia, y en segundo término, por razón de que el allanamiento efectuado es ilegal por haber sido realizado en una residencia distinta a la aparentemente indicada, por número, en la orden a esos efectos expedida por el Tribunal de Distrito. *Veamos.*

La declaración jurada que prestara el agente Bauzó Carrasquillo con el propósito de lograr la expedición de la orden de allanamiento en controversia —la cual juramentó el 11 de octubre de 1987 ante la Juez del Tribunal de Distrito de Puerto Rico, Hon. Josefina López de Font— en adición a brindar una somera descripción de la residencia a ser allanada, identifica la residencia objeto de la confidencia anónima, y en relación con la cual él prestara una alegada vigilancia, como la *A-18* de la citada Urb. La Esmeralda; la cual residencia, *conforme lo expresado en dicha declaración jurada*:

> ...Por el lado derecho *colinda* con la residencia *A-17*, la cual tiene un portón de rejas color negra y varias palmas y el camino no está pavimentado. Por el lado izquierdo *colinda* con la residencia *A-19*, por el frente colinda con la Calle Principal de la Urb. La Esmeralda de Caguas. (Énfasis suplido.) Caso Núm. CR-88-66, Alegato del Procurador General, pág. 33.

Como consecuencia de lo afirmado bajo juramento por Bauzó Carrasquillo en dicha declaración, la mencionada magistrada expidió ese mismo día 11 de octubre de 1987

una orden de allanamiento *contra* la residencia sita en el número *A-18* de la Urbanización La Esmeralda, Caguas, Puerto Rico. *¿Qué sucede?* La residencia, perteneciente a los apelantes Pagán Santiago y Ortiz Sánchez, que los agentes allanaron *no* es la A-18, sino que la A-17. *Ahí la razón de la fabricación de las fotografías con un letrero con el número A-18.* Dichos funcionarios —conocedores de nuestra jurisprudencia a los efectos de que es defectuosa y nula una orden de allanamiento que conceda discreción a los agentes de la Policía para allanar una (1) de dos (2) o de varias casas, *Pueblo v. Cruz Martínez*, 92 D.P.R. 747, 749 (1965), y aparentemente duchos en la fabricación de prueba para "cuadrar" un caso— se "aseguraron" de que la validez de dicha orden pudiera ser sostenida en corte poniéndole un letrero con el número A-18 a la residencia A-17 de la Urb. La Esmeralda y fotografiando la misma con dicho letrero; *esto es, "arreglaron" la escena de los hechos para conformarla al testimonio perjuro del agente Bauzó Carrasquillo.* Dicha actuación o conducta —*reprochable y delictiva*— es la que este Tribunal en el día de hoy refrenda al confirmar las convicciones decretadas a nivel de instancia.

## II

Conforme surge de la Opinión mayoritaria, contra los apelantes Milagros Figueroa y Rafael Santiago —personas que, aun cuando no residían en la residencia ilegalmente allanada, se encontraban presentes en la sala de dicha residencia el día del allanamiento— el Estado radicó acusaciones por infracciones al Art. 401 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2401, y al Art. 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 418, los cuales son delitos graves, y por infracciones a los Arts. 4 y 6 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs.

414 y 416, los cuales están catalogados como delitos menos graves.

De acuerdo con el procedimiento pautado por las Reglas de Procedimiento Criminal, los pliegos acusatorios por los delitos menos graves —por no tener derecho a vista preliminar bajo la Regla 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II— fueron radicados "directamente" ante el Tribunal Superior de Puerto Rico, Sala de Caguas, y las denuncias por los dos delitos graves antes mencionados fueron referidos al Tribunal de Distrito para la celebración de la antes mencionada vista preliminar. *Procede que se enfatice, en este momento, que todo el material delictivo fue ocupado en la residencia como consecuencia del allanamiento allí realizado y que estas dos personas fueron acusadas, respecto a dicho material delictivo, por meramente encontrarse allí presentes al momento de dicho allanamiento.*

En otras palabras, *la ocupación de la evidencia contra los apelantes ocurrió en un mismo evento, no susceptible de fraccionamiento fáctico ni jurídico, y por el mero hecho de estar allí presentes al momento de la ocupación de la misma.* Veamos la *importancia* de ello.

Como se expresa en la propia Opinión emitida por el Tribunal en el día de hoy, el juez del Tribunal de Distrito que presidió la celebración de la vista preliminar que establece la citada Regla 23 de Procedimiento Criminal determinó *no causa* contra los apelantes Figueroa y Santiago en relación con los dos delitos graves que se le imputaban. Inconforme con dicha determinación de no causa, el Estado acudió *en alzada,* conforme establece la Regla 24(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, ante un juez del Tribunal Superior de Puerto Rico. Dicho magistrado *confirmó o ratificó* la determinación de *no causa* que había realizado anteriormente el magistrado del Tribunal de Distrito.

A base de ello, la representación legal de Milagros Fi-

gueroa y Rafael Santiago, diligentemente solicitaron del Tribunal Superior, Sala de Caguas, la desestimación de los pliegos acusatorios radicados contra dichas personas por las alegadas infracciones a los Arts. 4 y 6 de la Ley de Armas de Puerto Rico, ante, por razón de cosa juzgada y/o impedimento colateral por sentencia. Dicho planteamiento fue declarado sin lugar por el tribunal de instancia. En su escrito de apelación los referidos apelantes le imputan al foro de instancia haber errado al así resolver. Contrario a lo que sostiene la mayoría de los integrantes de este Tribunal, somos del criterio que le asiste la razón a los referidos apelantes en dicho planteamiento. Veamos por qué.

Como certera y correctamente señala la representación legal de Milagros Figueroa y Rafael Santiago en el alegato que radicaron, el ordenamiento penal vigente en nuestra jurisdicción reconoce la doctrina de impedimento colateral por sentencia. La misma recoge la norma de que una sentencia resulta concluyente entre las mismas partes si versa y conlleva la relitigación en un caso posterior de las cuestiones de hecho esenciales, adjudicadas y determinadas previamente en tal sentencia. *Pueblo v. Pagán Pagán*, 100 D.P.R. 532 (1972); *Pueblo v. Landmark*, 100 D.P.R. 73 (1971). Se acepta que ello impide la ventilación de un segundo proceso y es motivo de desestimación, *aun cuando se trate de un delito distinto*, si dentro de la adjudicación del caso anterior, clara, directamente, *se dilucidaron y resolvieron hechos necesariamente decisivos para el segundo*. A esos efectos, véanse: *Pueblo v. Lugo*, 64 D.P.R. 554, 559–560 (1945); *Pueblo v. Ortiz Marrero*, 106 D.P.R. 140 (1977).

La Mayoría del Tribunal rechaza la aplicación de esta doctrina al caso de los apelantes Figueroa y Santiago basándose en que en los casos antes citados, a diferencia del presente, hubo "una sentencia final y firme de parte del Tribunal de Distrito" —(énfasis suprimido) opinión mayoritaria, págs. 488–489)— en el primer caso, mientras que en la situación de autos "todo lo que se celebró fue

una vista preliminar donde se determinó que no existía causa probable para enjuiciar a los apelantes por los delitos graves que le habían sido imputados". Íd., pág. 489.

Dicho argumento es tan flagrantemente erróneo que realmente no hay que extenderse mucho para refutarlo. El Tribunal se olvida del hecho que, conforme establecen las citadas Reglas 23 y 24 de Procedimiento Criminal, *la determinación de no causa probable* que originalmente emitiera el Tribunal de Distrito, *la cual fue ratificada en alzada por el Tribunal Superior*, tuvo el efecto de *exonerar totalmente* a estas dos personas de los delitos graves que se le imputaban y el de *impedir que el Ministerio Fiscal pueda presentar acusación alguna contra dichas personas en relación con dichos delitos.*

Somos del criterio que, a los efectos de la doctrina de impedimento colateral, *no* existe diferencia alguna entre una *sentencia absolutoria*, emitida la misma después de la celebración de un juicio, y una *resolución exoneratoria*, emitida después de la celebración de una vista preliminar. Ambas —la sentencia absolutoria y la resolución exoneratoria— tienen el efecto de *impedir* que la persona pueda ser procesada por otros delitos relacionados *siempre que* —como sucede en el presente caso— *estén presentes cuestiones de hecho decisivas para todos los casos que necesariamente fueron objeto de adjudicación en el primer procedimiento celebrado.*

En las *dos* vistas preliminares celebradas en el presente caso, en cuanto a los delitos graves, y en el juicio que da origen a esta apelación, la *cuestión fundamental* de hecho decisiva a dilucidar lo era si, por el mero hecho de estar presentes los apelantes Figueroa y Santiago en la residencia allanada, se le podía imputar a éstos *la posesión* tanto de los narcóticos como de las armas de fuego allí ocupadas. *Dos* (2) magistrados —luego de escuchar la prueba de cargo en *dos* (2) ocasiones— determinaron que *ni* tan siquiera existía causa probable para radicar acusación con-

tra éstos. *Al así resolver, necesariamente dilucidaron el hecho decisivo de la posesión en contra de la contención del Estado.* Ese hecho, igualmente, estaba presente en los casos que, por infracción a los Arts. 4 y 6 de la Ley de Armas de Puerto Rico, ante, se celebraron ante el foro de instancia. *El mismo, en consecuencia, no podía ser relitigado nuevamente.* Véase *Pueblo v. Ortiz Marrero*, ante.

### III

En resumen —*y en relación con todos y cada uno de los apelantes*— *disentimos* de la Opinión mediante la cual el Tribunal confirma las sentencias apeladas por entender que el material delictivo ocupado por los agentes del orden público en la residencia perteneciente a los apelantes Pagán Santiago y Ortiz Sánchez *no debió haber sido admitida en evidencia por razón de que*: (1) lo afirmado bajo juramento en la declaración jurada que sirvió de base a la expedición de la orden de allanamiento es falso, total o parcialmente, Regla 234(f) de Procedimiento Criminal, ante; (2) debido a que la orden de allanamiento expedida es fatalmente defectuosa ya que concedía *discreción* a los referidos agentes del orden público para allanar una (1) de dos (2) o varias residencias, *Pueblo v. Cruz Martínez*, ante, y (3) debido a que la residencia efectivamente allanada por la Policía fue una distinta a la que aparentemente indicaba, por número, la orden a esos efectos expedida por el tribunal que emitió la misma.

Ya únicamente en cuanto a los apelantes Milagros Figueroa y Rafael Santiago, *disentimos* por razón de entender que en relación con las acusaciones que contra ellos se dilucidaron en el foro de instancia es de aplicación la doctrina de impedimento colateral por sentencia.