TEXTO COMPLETO DE LA SENTENCIA
En la causa de epígrafe, el apelante, Sr. Félix L. Rodríguez Colón, solicita que revoquemos dos sentencias emitidas el 30 de junio de 2004 por el Tribunal de Primera Instancia, Sala Superior de Arecibo, en las que se le declaró culpable de robo domiciliario, Art. 173 del Código Penal, 33 LPRA see. 4279 e infracción a los Artículos 5.04 y 5.15 de la Ley de Armas, 25 LPRA sees. 458c y 458n.
Hechos
El viernes 25 de abril de 2003, la Sra. Iris Noélia González Cancel fue informada que su hijo de 15 años de edad, José Torrens González (Joselito), tenía en su posesión $200.00. La Sra. González Cancel verificó su cartera y se percató que, en efecto, le faltaban dos billetes de $100.00. A pesar de las múltiples ocasiones en que la Sra. González cuestionó a su hijo al respecto, éste negó haber tomado el dinero de su cartera.
Por entender que había sido su hijo el que había tomado el dinero y con el propósito de darle un “escarmiento”, ese mismo día en horas de la tarde la Sra. González informó a la Policía la desaparición de los $200.00 y a las 5:00 pm se presentó en la residencia el Agente Pinto, miembro de la Policía Municipal de Manatí, para investigar la querella. La Sra. González informó que ella tenía $16,700.00 en una cartera y que le faltaban $200.00. El Agente Pinto cuestionó sobre el monto del dinero y dónde lo guardaba, la Sra. González le indicó que tenía el dinero en su cartera y le mostró una cartera marrón, pequeña con dos “zippers”. Le explicó "que dicha partida se componía principalmente de billetes de $100.00, aunque también habían billetes en denominaciones de $50.00 y $20.00. Declaración jurada de Ms Noelia González Cancel, Recurso de Apelación, *433 Ap., pág. 2.
El Agente Pinto conversó a solas con Joselito, quien aceptó que había tomado los $200.00 de la cartera de su madre. Dicho agente lamentó lo sucedido y le dijo a la Sra. González que tan pronto supiera en qué su hijo había utilizado el dinero lo llamara y le informara al respecto. Declaración jurada de Ms Noelia González Cancel, Recurso de Apelación, Ap., pág. 2.
El domingo 27 de abril de 2003, la Sra. González se comunicó al cuartel y le indicó al Agente Pinto que había devuelto a Walmart una pistola “Gotcha” que Joselito había comprado con el dinero hurtado por lo que había recuperado $160.00.
Alrededor de las 9:00 pm de ese domingo, la Sra. González se encontraba en su residencia y en el dormitorio de su hija Naiomy Torrens González (Naiomy) junto a sus dos hijos menores de edad. La Sra. González y Naiomy veían la televisión, mientras que Joselito utilizaba la computadora. Por su parte, el Ledo. Miguel Angel Arzán Hernández, esposo de la Sra. González, se encontraba en el baño. Cuando el Ledo. Arzán salió del baño llamó a la Sra. González y le indicó que había alguien en la puerta pidiendo su cartera. Cuando ésta se asomó al pasillo desde la puerta del dormitorio vio a un individuo armado con una pistola, quien apuntándolos a todos le dijo que quería la cartera. La Sra. González declaró que había buena iluminación porque en lugar del pasillo que se encontraba el individuo había una luz encendida. Ella se puso nerviosa, buscó en el closet y le entregó al asaltante una cartera de mahón. El asaltante tiró la cartera y dijo “esta no es, tu sabes la que yo quieroLa Sra. González se dmgió al otro cuarto y le dio la cartera marrón que contenía aproximadamente $16,900.00; el asaltante tomó la cartera y se fue de la residencia. Transcripción del juicio en su fondo, Tomo I, págs. 2-6. Joselito corrió detrás del sospechoso y vio que el asaltante se montó en un auto que lo esperaba unas casas más delante de la suya y se fue. Transcripción del juicio en su fondo, Tomo I, pág. 63. El joven se fue detrás del vehículo y regresó aproximadamente 15 minutos más tarde. Transcripción del juicio en su fondo, Tomo n, pág. 8.
El incidente duró aproximadamente de 5 a 8 minutos. Tan pronto el individuo huyó, la Sra. González informó a la policía lo ocurrido. El Agente Feliciano de la Policía Municipal de Manatí tomó los datos del robo. Transcripción del juicio en su fondo, Tomo I, págs. 2-6.
En la declaración jurada núm. 2926 del día 9 de mayo de 2003, la Sra. González describió al asaltante como de 5 pies 6 pulgadas de altura, trigueño claro, delgado, usando una gorra puesta con diseño al frente, pantalón mahón a la rodilla, tennis y medias blancas, con pómulos altos y no tenía barba ni bigote.
El 15 de junio de 2003, domingo día de los padres, alrededor de las doce del medio día, la Sra. González con su esposo y sus dos hijos, se encontraban en la funeraria en el velorio del abuelo paterno de los niños. Estando allí, la Sra. González vio al Sr. Román, dueño de la funeraria, entrar junto a su esposa y acompañado de otro individuo que identificó inmediatamente como la persona que había robado su cartera. Transcripción del juicio en su fondo, Tomo I, pág 8. El dueño de la funeraria le dio unas instrucciones al individuo de cómo pasarían el ataúd al auto fúnebre y cuando éste contestó, la Sra. González también identificó la voz del individuo como la del asaltante que entró a su residencia. El sujeto se puso nervioso y se movía a distintos lugares de la funeraria mientras miraba a la Sra. González de forma amenazante. Transcripción del juicio en su fondo, Tomo I, págs. 9-11.
Estando todavía en la funeraria, Joselito le informó a su madre que allí se encontraba el individuo que había robado en la casa e identificó a la misma persona que ella ya había visto. Transcripción del juicio en su fondo, Tomo I, págs. 13-14.
Al regreso de la funeraria a la casa, la familia se encontraba plantando un árbol frente a la vivienda, cuando el individuo, que tanto Joselito como la Sra. González habían identificado en la funeraria, transitó en un coche *434 fúnebre blanco frente a la residencia, mirándolos fijamente. Al día siguiente, la Sra. González y Joselito se presentaron al C.I.C. de Vega Baja y fueron entrevistados por el Agente Vázquez, el Agente Pérez Bonilla y el Agente Jiménez. Transcripción del juicio en su fondo, Tomo I, págs. 16-17. Los agentes le mostraron varios libros con fotografías, pero no pudieron identificar a nadie. Transcripción del juicio en su fondo, Tomo I, pág. 33. Además, la Sra. González fue llevada a un bocetista, a quien le dio los rasgos físicos del asaltante. Transcripción del juicio en su fondo, Tomo I, pág. 34. Como parte del boceto realizado, la querellante fue sometida a un “Une up”; sin embargo, tampoco identificó a nadie.
El 17 de junio de 2003, la Sra. González prestó declaración jurada núm. 3002 ante el Fiscal Wilson González Antongiorgi sobre lo acontecido en la funeraria. En dicha ocasión, la Sra. González describió al asaltante como un individuo de 5 pies 5 pulgadas ó 5 pies 6 pulgadas de estatura, “trigueñito”, con una cicatriz en la frente entre medio de las cejas y delgado.
El 17 de junio de 2003 citaron a la Sra. González para que se presentara al cuartel de Manatí. Una vez allí, la Sra. González identificó al Sr. Félix L. Rodríguez Colón como el individuo que había robado en su casa y que había identificado días antes en una funeraria. Transcripción del juicio en su fondo, Tomo I, pág. 19.
El 17 de junio de 2003, el Sr. Félix L. Rodríguez Colón fue acusado por los hechos ocurridos el 27 de abril de 2003 en la residencia de la Sra. González Cancel. Le radicaron cargos por Robo Domiciliario, Art. 173 del Código Penal, 33 LPRA see. 4279 y violaciones a los Artículos 5.04 y 5.15 de la Ley de Armas, 25 LPRA sees. 458c y 458n.
Tras varios trámites procesales, innecesarios aquí pormenorizar, el juicio en su fondo se celebró ante jurado. El Ministerio Público presentó como prueba testifical el testimonio de la Sra. González Cancel, el de su hijo José Torrens González y el del Agente Bonilla. Por su parte, la defensa presentó los testimonios del Sr. Hiram González Gerena y de la Sra. Bárbara Delgado Morales. El testimonio del Sr. Severo Eduardo Cruz, testigo de defensa, no fue presentado ante el jurado por no merecerle credibilidad al TPI en audiencia previa.
El jurado emitió veredicto de culpabilidad y el 30 de junio de 2004, el TPI dictó sentencia e impuso al Sr. Rodríguez Colón 30 años de reclusión por el delito de Robo Domiciliario; 5 años y 10 años de reclusión por infracción al Artículo 5.15 y el Art. 5.04 de la Ley de Armas, respectivamente.
Inconforme, el Sr. Rodríguez Colón apela en la causa de epígrafe e imputa al foro de instancia los siguientes señalamientos:

“Primer Error

Erró el jurado al encontrar culpable al acusado en virtud de una prueba de cargo que no estableció su culpabilidad más allá de duda razonable y fundada.

Segundo Error

Erró el jurado al encontrar culpable al apelante por los delitos de robo domiciliario y violación a la Ley de Armas a pesar que el Ministerio Público no logró identificar al acusado como el autor de los hechos, más allá de duda razonable.

Tercer Error

Erró el jurado al encontrar culpable al apelante a pesar que la prueba presentada por el Ministerio Fiscal para establecer la conexión del acusado con la comisión de los delitos fue contradictoria, vacilante e insuficiente.

*435
Cuarto Error

Erró el Tribunal de Primera Instancia al dictar sentencia de culpabilidad cuando el Ministerio Público voluntariamente suprimió evidencia exculpatoria relevante a la inocencia del acusado, violando así su derecho a un juicio justo y aun debido proceso de ley.

Quinto Error

Erró el Tribunal de Primera Instancia al no permitir la presentación al panel de jurado de prueba testifical de la defensa bajo el argumento que dicha prueba le carece de credibilidad al Tribunal, cuando la adjudicación de credibilidad de los testigos es una función exclusiva del panel de jurado.

Sexto Error

Erró el jurado al encontrar culpable al acusado cuando la suma acumulativa de errores manifiestos en la aplicación del derecho sustantivo y probatorio en el juicio celebrado, privaron de un juicio justo e imparcial al acusado, provocaron que el jurado se confundiera y emitiera un veredicto de culpabilidad. ”

El 4 de agosto de 2004, el apelante solicitó al TPI fianza en apelación y además presentó una solicitud de nuevo juicio que acompañó con una declaración jurada de la Sra. Damaris Sánchez Vázquez, vecina de la Sra. González Cancel. En dicha declaración, la Sra. Sánchez Vázquez sostuvo que el día de los hechos salió a su balcón porque su perro ladraba insistentemente y vio salir al sospechoso que asaltó la residencia de la Sra. González Cancel. Describió a al individuo de la siguiente manera:

“El muchacho llevaba una gorra roja y la camisa del mismo color rojo y unos pantalones azules cortos, eran un poquito más debajo de las rodillas, también tenía tennis. Tenía una estatura aprox. de 5 pies y 6 pulgadas, la tez era clara con una edad aprox. de 18 a 20 años. A este muchacho nunca lo había visto por el área. La forma del cuerpo de este muchacho es un tipo husky parecido al de Joselito. ”

Alegó que había visto anteriormente al apelante trabajando en la funeraria del Sr. Román y que no era la misma persona que había visto salir de la residencia de la Sra. González Cancel el día del asalto.
Así las cosas, el 29 de septiembre de 2004, el foro de instancia, luego de celebrar vista, declaró “no ha lugar” ambas peticiones del apelante. La defensa solicitó reconsideración, que fue denegada mediante notificación emitida el 11 de octubre de 2004.
Por otra parte, en los trámites apelativos, el apelante presentó una transcripción de los testimonios ofrecidos en el juicio en su fondo. Mediante Resolución del 13 de octubre de 2004 ordenamos a la parte apelante y al Procurador General presentar sus respectivos alegatos.
El Procurador compareció y sostuvo que los testimonios en cuanto a la descripción del acusado fueron consistentes, por lo que el apelante tuvo un juicio justo e imparcial y presentó prueba a su favor. Entiende que no procede la revocación de la sentencia apelada.
Exposición y Análisis
Por estar estrechamente relacionados, discutiremos los primeros tres señalamientos conjuntamente.
En los mismos, el apelante impugna la apreciación que de la prueba realizó el Tribunal de Primera Instancia, para entender probada su culpabilidad más allá de duda razonable.
*436 En nuestra jurisdicción, “[e]l precepto constitucional que garantiza al acusado la presunción de inocencia [Art. II, Carta de Derechos, Sec. 11, Constitución del Estado Libre Asociado de Puerto Rico] exige que toda convicción siempre esté sostenida por prueba que establezca más allá de duda razonable todos los elementos del delito y la conexión del acusado con los mismos”. Pueblo v. Bigio Pastrana, 116 DPR 748, 760-61 (1985). Dicho precepto fue incorporado en la Regla 110 de las de Procedimiento Criminal, 34 LPRA Ap. II, R. 110, que en lo pertinente dispone que se presumirá inocente al acusado en todo proceso criminal, mientras no se probare lo contrario, y en caso de existir duda razonable acerca de su culpabilidad, se le absolverá.
En cuanto a este último particular, se ha establecido que el quántum de evidencia que la Constitución prevé para que se pueda sostener una convicción es aquel que establece una certeza moral capaz de convencer sobre la concurrencia de todos y cada uno de los elementos del delito imputado, así como la conexión del acusado con éstos. Pueblo v. Narváez Narváez, 122 DPR 80 (1988); Pueblo v. Carrasquillo Carrasquillo, 102 DPR 545, 552 (1974). Dicha prueba tiene que ser satisfactoria, es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupaciones y en un ánimo no prevenido. Pueblo v. Rosaly Soto, 128 DPR 729, 739 (1991); Pueblo v. Cabán Torres, 117 DPR 645, 652 (1986).
La insatisfacción o intranquilidad del juzgador con la prueba es lo que se conoce como duda razonable y fundada. Pueblo v. Cabán Torres, supra, a la pág. 652. Ahora bien, “ello no significa que toda duda posible, especulativa o imaginaria tenga que ser destruida. Sólo se exige que la prueba establezca aquella certeza moral que convence, que dirige la inteligencia y que satisface la razón”. Pueblo v. Pagán Santiago, 130 DPR 470, 480 (1992). Respecto la suficiencia de prueba, la Regla 10(C) de las de Evidencia, 32 LPRA Ap. IV, R. 10(C), dispone que “[p]ara establecer un hecho, no se exige aquel grado de prueba que, excluyendo posibilidad de error produzca absoluta certeza; sólo se exige la certeza o convicción moral en un ánimo no prevenido”. Conforme a ello, una parte descarga su responsabilidad de probar un hecho persuadiendo al juzgador de ánimo no prevenido o prejuiciado, de que tal hecho ocurrió. Pueblo v. Torres García, 137 DPR 56 (1994); Pueblo v. Rodríguez Román, 128 DPR 121, 130-31 (1991).
De otra parte, como se sabe, corresponde al jurado, como juez de los hechos, determinar la credibilidad del testigo y para ello está en mejor posición que un tribunal apelativo, sobre todo luego de observar la manera en que la testigo se expresó y su comportamiento en la silla testifical ("demeanor"). Pueblo v. Chévere Heredia, 139 DPR 1 (1995); Ortiz v. Cruz Pabón, 103 DPR 939, 947 (1975). Es norma reiterada por nuestro Tribunal Supremo que la valoración de la prueba corresponde al foro primario y que, en revisión, los juzgadores de hechos merecen respeto y confiabilidad en la apreciación de la prueba, Pueblo v. Rosario Cintrón, 102 DPR 82 (1974); Pueblo v. Nevárez Vírela, 101 DPR 11 (1973); Pueblo v. Rodríguez Hernández, 91 DPR 183, 203 (1964). Por tanto la determinación de culpabilidad que hace el juzgador de hechos ante el foro de Primera Instancia es merecedora de gran deferencia por parte del tribunal apelativo. Ortiz v. Cruz Pabón, 103 DPR 939 (1975). No procede que intervengamos con las determinaciones de hechos y la adjudicación de credibilidad que haga el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. Pueblo v. Pagán Santiago, supra. Ausentes estos elementos, no hay razón para que este foro intervenga con la adjudicación de credibilidad que hizo el Tribunal de Primera Instancia. Pueblo v. Mendoza Tozada, 120 DPR 815, 820 (1988). Ello responde a que el juzgador de los hechos en Instancia escucha y ve declarar a los testigos, y es quien de ordinario está en mejor posición para aquilatar la prueba testifical. Pueblo v. Chévere Herederia, 139 DPR 1 (1995); Pueblo v. Cabán, supra, a las págs. 653-54 (1986).
No obstante tal grado de deferencia, no podemos afirmar que tales juzgadores no se equivoquen. De ahí que en casos apropiados no se debe vacilar- en dejar sin efecto un fallo condenatorio cuando de un análisis de la prueba, que tuvo ante sí el tribunal sentenciador, surgen serias dudas, razonables y fundadas, respecto a la culpabilidad del acusado. Pueblo v. Méndez Rolón, 100 DPR 734 (1972); Pueblo v. Rivera Arroyo, 100 DPR 46 (1971); Pueblo v. Torres Rolón, 99 DPR 970 (1971); Pueblo v. Carrasquillo Carrasquillo, supra, a la pág. 551. Cuando ello ocurre, no se trata de una intervención con la función del juez o del jurado en la apreciación de la *437 prueba, sino de un error de derecho. Así, en casos donde el apelante logra establecer en apelación que el foro sentenciador de primera instancia incidió en error revocable, realmente se trata de que el contenido de la prueba aportada por el Ministerio Público hace surgir una duda razonable sobre la responsabilidad del acusado, lo que es revisable como cuestión de Derecho. Pueblo v. Carrasquillo Carrasquillo, supra, a la pág. 552; Pueblo v. Cabán Torres, supra; Pueblo v. Rivero, Lugo y Almodóvar, 121 DPR 454 (1983); Pueblo en interés menor F.S.C., 128 DPR 931, 940 (1991).
Un examen objetivo de la prueba aportada por el Ministerio Público en el caso que nos ocupa nos mueve a coincidir con el foro apelado en que la evidencia allí practicada resultó suficiente en derecho para probar más allá de duda razonable la culpabilidad del acusado, por lo que el fallo que es objeto de apelación en el expediente del epígrafe debe prevalecer.
Aun cuando la transcripción de los testimonios presentados en el juicio en su fondo revele la existencia de algunas contradicciones entre los testimonios que conformaron la prueba de cargo, éstas no son suficientes como para desvirtuar totalmente su valor probatorio. Reiteradamente se ha sostenido en esta jurisdicción que las contradicciones per se no obligan a los juzgadores primarios (sea juez o sea jurado) a rechazar testimonios. Pueblo v. Ramos Miranda, 140 DPR 547 (1996); Pueblo v. Pagan Santiago, supra. El hecho de que existan contradicciones en las declaraciones de un testigo, no justifica que se rechace dicha declaración en su totalidad, cuando las contradicciones no son decisivas y el resto del testimonio es suficiente para establecer la transacción delictiva, superar la presunción de inocencia y establecer la culpabilidad, más allá de duda razonable. Pueblo v. Ramos Álvarez, 122 DPR 287, 317 (1988). Las contradicciones e inconsistencias en los testimonios que aquí nos ocupan, no exceden aquéllas que son de esperar cuando varios testigos recrean con sus relatos unos hechos ocurridos, casi un año antes del juicio, máxime cuando tales inconsistencias sólo se evidencian en detalles secundarios del relato, mas no en los elementos esenciales y principales.
Según la transcripción del juicio en su fondo, surge que la prueba presentada por el Ministerio Público fue suficiente para establecer la culpabilidad del acusado más allá de duda razonable. Además de ser suficiente, la prueba fue satisfactoria. Los testimonios tanto de la Sra. González como de Joselito fueron fuertes, consistentes y claros. La identificación fue positiva, tanto en el aspecto físico como en la voz. El apelante fue identificado de forma espontánea extrajudicialmente por dos personas diferentes, por la Sra. González y por Joselito. Además, el apelante presentó a otros testigos y tuvo oportunidad de carearse con los testigos de cargo. En fin, tuvo un juicio justo e imparcial.
Por otro lado, y como queda ya dicho, fue el jurado quien observó y oyó a los testigos que declararon, atendió su comportamiento y el carácter de sus testimonios y les dio el crédito que entendió se merecían antes de emitir su dictamen. No existe en autos razón alguna por la cual debamos intervenir con la apreciación que de la prueba hizo el jurado, así como a la credibilidad que le mereció cada testigo y la totalidad de la prueba. Este no es el caso en el que debamos apartarnos de la sabia norma de abstención judicial en deferencia a la adjudicación de credibilidad que hiciera el tribunal a quo.
Examinada la evidencia en este caso, concluimos que la prueba de cargo constituye evidencia suficiente para sostener la convicción apelada. Por lo tanto, no se cometieron los errores señalados.
En su señalamiento número cuatro, el apelante alega que erró el TPI al emitir sentencia de culpabilidad cuando el Ministerio Público suprimió evidencia exculpatoria.
En Pueblo v. Echevarría Rodríguez, 128 DPR 299, 333 (1991), nuestro Tribunal Supremo expresó lo siguiente, en cuanto a la evidencia exculpatoria:

“[E]videncia exculpatoria es toda aquélla que resulta favorable al acusado y que posee relevancia en cuanto 
*438
a los aspectos de culpabilidad y castigo, irrespectivamente de la buena o mala fe exhibida por el Ministerio Fiscal. [Citas omitidas.] La ‘relevancia’ de la evidencia se encuentra condicionada a la impresión derivada por el foro apelativo de que la prueba exculpatoria suprimida, con una razonable probabilidad, habría alterado el veredicto o el castigo impuesto de haber sido presentada al juzgador de los hechos. [ Citas omitidas.]”

Al respecto, el profesor Chiesa explica que: “[l]o decisivo es que no se dejará sin efecto una convicción por efecto de haber el ministerio fiscal faltado a su obligación de revelar prueba favorable a la defensa si el Tribunal que considera la omisión del Estado, estima que no hay una probabilidad razonable de que el resultado hubiera sido otro de haber el ministerio fiscal revelado la información, independientemente de que ésta fuera o no solicitada por la defensa, y de cuán específica hubiera sido la solicitud, si alguna”. 2 Ernesto L. Chiesa Aponte, Derecho Procesal Penal de P.R. y E.U. § 10.3, a la pág. 44 (1993).
La defensa alega que constituye prueba exculpatoria el resultado de las huellas digitales tomadas en la residencia de la Sra. González por razón de que no fueron entregadas y de igual forma el testimonio de varios vecinos, a los cuales el Fiscal no tomó declaraciones juradas con el alegado único fin de no presentar la referida prueba. No podemos aquí concluir que en función a tales alegaciones existe una probabilidad razonable de que ello pudiere alterar de alguna forma el veredicto del juzgador en Instancia. Tales planteamientos, de por sí no disminuye el valor probatorio de la identificación espontánea hecha por los demás testigos, y el innegable hecho de que cada uno de ellos identificó al acusado en corte abierta, frente al juzgador, pudiendo el jurado apreciar la certeza o seguridad que cada testigo mostró al señalar al acusado como la persona que realizó el robo la noche de los hechos. Por lo tanto, no podemos concluir que se cometió el error señalado.
En el quinto y último señalamiento, el apelante sostiene que erró el foro de instancia al no permitir que el jurado escuchara el testimonio del Sr. Severo Eduardo Cruz, por no merecerle credibilidad.
En su testimonio, el Sr. Cruz, como testigo de reputación, expuso que le dijo en una ocasión a la Sra. González que ella sabía que el acusado era inocente y que ella contestó: “sí, yo lo sé, pero yo no puedo echar el caso para atrás porque el señor fiscal me lo impidió y mi hijo está primero”. Transcripción de juicio en su fondo, pág. 56.
La Regla 19 de las de Evidencia, 32 LPRA Ap. IV, R. 19, dispone lo siguiente:

“Evidencia pertinente puede ser excluida cuando su valor probatorio es de poca significación en relación a cualesquiera de estos factores:

(a) Peligro de causar perjuicio indebido

(b) probabilidad de confusión

(c) desorientación del jurado

(d) dilación de los procedimientos

(e) innecesaria presentación de prueba acumulativa. ”

Esta regla tiene como propósito evitar que el tribunal se vea obligado a admitir evidencia pertinente aunque estuviera convencido de que bajo, las circunstancias específicas del caso, es deseable que la evidencia no pase al juzgador (jurado) tomando en consideración el fin último de las reglas, que es la búsqueda de la verdad. Chiesa, Ernesto, Tratado de Derecho Probatorio (Reglas de Evidencia de P.R. y Federales), Tomo I, Publicaciones JTS, 1998, pág. 6.
*439 Como vemos, el tribunal de instancia cuenta con discreción para excluir cierta prueba, con más razón si es de referencia, tomando en consideración el balance de factores a que se refiere la regla. “En revisión o apelación, el tribunal apelativo no debe hacer una determinación de novo bajo la Regla 19, sino limitarse a estimar si el tribunal de instancia abusó de su discreción...” al excluir o admitir la evidencia. Chiesa, Ernesto, Tratado de Derecho Probatorio (Reglas de Evidencia de P.R. y Federales), supra, pág. 8.
Al respecto, el Profesor Chiesa Aponte también señala que " [s]e trata de un ejercicio mental del tribunal apelativo. Este ignorará o restará la evidencia erróneamente admitida o sumará la erróneamente excluida para estimar la probabilidad de un resultado distinto". Tratado de Derecho Probatorio (Reglas de Evidencia de P.R. y Federales), Tomo II, Publicaciones JTS, 1999, pág. 11832.
Hecho tal análisis en la causa de epígrafe y no habiéndose probado un abuso de discreción por parte del TPI, es preciso concluir que aunque se haya excluido el testimonio del Sr. Severo Eduardo Cruz, por carecerle de credibilidad al tribunal, en el expediente hay otra evidencia suficiente para que, fuera de toda duda razonable, el Tribunal de Primera Instancia (jurado) emitiera un fallo de culpabilidad por los delitos imputados.
El récord demuestra que en todo caso no se trata de un error capaz de causar la revocación del dictamen. De la totalidad de la evidencia se desprende que la culpabilidad del apelante quedó probada fuera de toda duda razonable. Tampoco estamos ante un error perjudicial, en caso de que se tratare de error. Pueblo v. Corales Irizarry, 107 DPR 481 (1978).
Dictamen
Por los fundamentos que anteceden, se confirma en su totalidad la sentencia apelada.
Lo acordó y manda el Tribunal y lo certifica la Secretaria.
Laura M. Yélez Vélez
Secretaria del Tribunal de Apelaciones