ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| EL PUEBLO DE PUERTO RICO | | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce |
|---|---|---|
| Recurrido | | |
| V. | KLCE202300180 | Criminal Número: JSC2022G0139 AL 0141 (Salón 505) |
| JOSEPH LEE CINTRÓN DÁVILA | | Sobre: Art. 4.01 de la Ley de Sustancias Controladas |
| Peticionario | | |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Rivera Torres y el Juez Salgado Schwarz.

Salgado Schwarz, Carlos G., Juez Ponente.

# S E N T E N C I A

En San Juan, Puerto Rico, a 30 de junio de 2023.

Comparece el Sr. Joseph Lee Cintrón Dávila (señor Cintrón Dávila o Peticionario) y solicita que revoquemos una *Resolución* emitida el 23 de enero de 2023 por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI o foro primario).[1] Por medio del referido dictamen, el TPI denegó una *Moción en Solicitud de Desestimación* presentada por el Peticionario y rechazó aplicar la doctrina de impedimento colateral por sentencia.

Por los fundamentos que procedemos a exponer, *confirmamos* el dictamen recurrido.

-I-

A continuación, hacemos una exposición de los acontecimientos fácticos suscitados en el presente caso, conforme se desprenden del expediente ante nuestra consideración.

_____

[1] Notificada el 25 de enero de 2023.

Número Identificador

SEN2023_____

El 13 de abril de 2021, la Policía de Puerto Rico diligenció una *Orden de Registro y Allanamiento* en la residencia número 5905 ubicada en la Barriada Bélgica, Calle Dra. Elba R. Pereles Vélez, en Ponce, Puerto Rico.[2] Según surge de dicha orden, la misma tuvo como base para su expedición una declaración jurada prestada por el Agte. Wilfredo Pérez Rivera (Agte. Pérez Rivera), en la que este expuso que:

> El día, viernes 12 de marzo del [sic.] 2021, tomé servicio a las 10:00 am en la División Drogas, Narcóticos, Control del Vicio y Armas ilegales Ponce, bajo la supervisión del Sargento Mart[í]n Pérez Rodríguez placa 8-20182. A eso de las 12:00 p.m. me entrevisté personalmente con un Confidente no participante en delito reportado. Esta persona alega que en la calle Dra. Elba R. Pereles Vélez número 5905, la segunda residencia del Sur a Norte desde la cancha de baloncesto que ubica en la calle Paseo Bélgica en la Barriada Bélgica en Ponce, viven varios jóvenes entre ellos uno de nombre Christopher Padilla Negrón con sus familiares. Estos muchachos se dedican a guardar Cocaína, Crack, Heroína y Marihuana, para el conocido punto de drogas que opera allí 24 horas al día. El runner o tirador llegan [sic.] hasta la residencia a buscar paquetes de drogas. La persona que me brindó la información me ubicó personalmente en la residencia. De esta información le di conocimiento al Sargento Martín Pérez Rodríguez placa 8-20182, quien me instruyó a que investigara y corroborara, que de observar alguna actividad ilegal le informara para determinar la acción a seguir. A esta querella asignó el número **2021-400-3-00035** siendo plasmada en el documento PPR-126.8 el cual se titula Llamadas Confidenciales. Para oportunamente comenzar la misma.

> El día, miércoles 31 de marzo de 2021, tomé servicio a las 5:00 a.m. en la División de Drogas, Narcóticos, Control del Vicio y Armas ilegales Ponce, bajo la supervisión del Sargento Martín Pérez Rodríguez placa 8-20182, el mismo me asignó un vehículo confidencial, un radio portátil, unos binoculares de la Policía de Puerto Rico. A eso de las 12:30 p.m. me

---

[2] La *Orden de Registro y Allanamiento* fue expedida el 6 de abril de 2021.

transporté hacia la Barriada Bélgica, calle Dra. Elba R. Pereles Vélez en Ponce, donde busqué y encontré un lugar para comenzar la investigación donde podía observar claramente atravez [sic.] de los binoculares la residencia #5905. Aproveché el momento como no se observaba a ninguna persona en el exteríor, comienzo a tomar colindancias. A eso de las 1:30 p.m. observé a través de los binoculares que llega caminando de Sur a Norte por la calle Elba Pereles Vélez desde el área de la cancha de baloncesto un joven grueso de tez blanca, pelo corto negro, estatura mediana, vestido con camisa crema con diseño, pantalón corto rojo, chancletas de color negro y se detiene frente al portón peatonal de la residencia 5905. Se introduce su mano derecha en el bolsillo derecho de su pantalón y saca varios billetes en papel moneda, en esos momentos sale del interior de la residencia hasta el área del portón donde se encontraba el joven de pantalón rojo, un individuo joven, trigueño claro, de constitución y estatura mediana, vestido con camisa color blanco, el cual tom[ó] el dinero caminando hasta el interior de la residencia perdiéndolo de vista. Como a los tres minutos aproximadamente vuelve a salir el joven de camisa color blanco teniendo en estos momentos la posesión de una bolsa plástica transparente la cual sac[ó] de su interior varias bolsitas plásticas de [sic.] transparente[s] de tonalidad verde conteniendo aparente picadura de marihuana, según mi apreciación y experiencia como agente de drogas. Este entregándola al joven que se encontraba en exterior de la residencia 5905, el cual ocult[ó] en su bolsillo derecho delantero; despidiéndose, caminando nuevamente hacia el Sur, perdiendo de vista en el área de la cancha. A eso de la 1:45 p.m. observé que sale nuevamente el joven vestido de camisa color blanco por el portón peatonal de la residencia 5905. Este tenía pantalón corto deportivo negro de color negro [sic.] con [líneas] color rojo y tenis negro[s] y en ambas piernas tatuajes. Este comienza a hablar por teléfono celular, cruza la calle y aborda un vehículo de motor Jeep, modelos [sic.] Compass, de color blanca con la tablilla JHA-601, iniciando la marcha por la calle Elba Pereles Vélez hacia la calle paseo Bélgica perdiéndolo de vista. Me mantuve en el lugar por espacio de 15 minutos y al no observar ninguna otra transacción decido marcharme del lugar para continuar oportunamente con la investigación.

A las 3:00 de la tarde regreso nuevamente a la barriada Bélgica, ubicándome en un

lugar donde podía observar nuevamente la residencia 5905. Al cruzar la calle frente a la residencia bajo investigación se encontraba el vehículo de motor Jeep, modelos [sic.] Compass, de color blanco con la tablilla JHA-601. No es hasta las 3:15 p.m. que observé atravez [sic.] de los binoculares que llega a pies de Norte A Sur por la calle donde ubica la residencia bajo investigación, un individuo delgado, de estatura pequeña, cabello castaño de rabo, con varios tatuajes en la cara[,] brazos[,] manos y piernas, vestido de camisa de maguillo blanc[a], pantalón corto deportivo color rojo, tenis crema y se detiene frente a la residencia 5905 en la entrada derecha donde ubica un portón de rejas color blanco, comenzó a llamar con voz fuerte el nombre de Christopher, a los 2 minutos sale del interior el joven que había observado saliendo horas antes de la residencia bajo investigación. Acto seguido este último le entrega al individuo que lleg[ó] a la residencia una bolsa plástica transparente con varias bolsas plásticas transparente[s] de tonalidad verde de aparente picadura de marihuana, otras de color amarillo con polvo de aparente cocaína y envolturas de papel aluminio, color rojo brilloso que a base de experiencia y apreciación se trataba de sustancias controladas como heroína, por la forma y manera de empaque. El cual la toma y guarda en el área frontal de su cintura y pantalón, caminando nuevamente hacia el Norte llegando el conocido punto de venta de sustancias controladas, se detuvo frente a una residencia la cual es utilizada como hospitalillo. El joven de camisa blanca entr[ó] por el balcón de la residencia número 5905 perdiéndolo de vista.

En esos momentos siendo las 3:35 p.m., decido comunicar por radio las descripciones y ubicación del individuo que tenía las sustancias controladas en la calle Dra. Elba Pereles Vélez y que lo arrestaran. Luego de varios minutos observé que llegan los compañeros en un vehículo oficial rotulado de la Policía Puerto Rico, que el individuo de camisa de maguillo de color blanco ven[í]a corriendo hacia el Sur, por dicha calle dándole seguimiento el Agte. Ramón Caraballo Denisa placa 23887 y el Agte. Gerardo González Montalvo placa 33302, los cuales se internaron en un solar yermo perdiéndolos de vista, al pasar esta situación me desmonto del vehículo, camino a paso ligero hasta llegar al lugar donde el Agte. Caraballo Denisa tenía bajo arresto al individuo que había observado

haciendo transacciones de sustancias controladas e identificándoselo al compañero. Me marché del lugar sin ser detectado en el vehículo confidencial hasta llegar a la División Drogas y Narcóticos de Ponce. Ya en la División observé la evidencia ocupada por el Agte. Caraballo Denisa la cual tenía las mismas descripciones de la transacción que yo había observado. El individuo resultó llamarse Roberto González Jiménez, la evidencia consistía en 26 bolsitas plásticas transparentes selladas [a] presión de tonalidad amarilla que en su interior contenía polvo granulado de Cocaína en modalidad de crack, 13 envolturas de papel aluminio dobladas a manera de decks color rojo y en su interior contenía polvo de heroína, 5 bolsas plásticas transparentes de tonalidad verde, selladas a presión con grapas y en su interior contenía picadura de marihuana. El Agte. Caraballo Denisa le realizó la prueba de campo a dicha evidencia la cual arrojando positivo a cocaína, heroína y marihuana la misma fue depositada en el sobre de evidencia n[ú]mero 397606, para luego ser llevada al Instituto de Ciencia y Forenses [sic.] de Ponce para su correspondiente análisis. El Sargento Martín Pérez Rodríguez placa 8-20182 me instruyó a que pasara a la Fiscalía de Ponce para que presentara una declaración jurada de los hechos ocurridos le diera conocimiento al fiscal de turno para así este entendiese librara una Orden de Registro y/o Allanamiento a la residencia de referencia por estar allí violándose la Ley de Sustancias Controladas de Puerto Rico.

Durante la investigación pasé a la oficina Real Time Crime Center se corrobor[ó] que el vehículo de motor marca Jeep, modelo Compass, color blanco, con la tablilla JHA-601, le corresponde como dueño registral a la Sra. Lenainne Marie Ramírez Santiago, con residencia en la Urb. Los Cabos, calle Guayacán 1989 en Ponce PR. Bajo el de Christopher Padilla Negrón, con seguro social […], no aparece que este tenga algún tipo de licencia de conducir, arma de fuegos u otros, ni expediente criminal.

Muy respetuosamente estoy solicitando de este Honorable Tribunal que, si de la forma declarada por mí encuentra que existe causa probable para el registro y allanamiento al [sic.] **RESIDENCIA NÚMERO 5905, CALLE DRA. ELBA PERELES VELEZ EN LA BARRIADA B[É]LGICA DE PONCE PR.**, Se sirva a expedir una orden de registro y allanamiento para dicho lugar por estarse

violando allí la Ley de Sustancias Controladas de PR con el propósito de buscar específicamente **Sustancias Controladas,** Que de ocuparse evidencia este suscribiente y/o cualquier agente del orden público los traerá hasta vuestra presencia de la forma y manera que la ley así lo autorice y **de ser necesario, se fuerce la entrada a los mismos para evitar la desaparición de la evidencia.** (Énfasis y subrayado en el original).[3]

Así las cosas, el 15 de abril de 2021, el Ministerio Público presentó un primer caso contra el señor Cintrón Dávila por las sustancias controladas (cocaína, heroína y marihuana) incautadas en la residencia número 5905 donde este se encontraba presente al diligenciarse la referida *Orden de Registro y Allanamiento* (en adelante, el *Primer Caso*). En específico, el Estado le imputó al Peticionario haber incurrido en tres violaciones al Art. 411-A de la Ley Núm. 4 de 23 de junio de 1971, conocida como la *Ley de Sustancias Controladas de Puerto Rio* (Ley Núm. 4).[4] Sobre el particular, se alegó que:

EL REFERIDO ACUSADO JOSEPH LEE CINTR[Ó]N D[Á]VILA, PARA EL DÍA 13 DE ABRIL DE 2021, A ESO DE LAS 9:30 A.M. Y EN PONCE, PUERTO RICO, QUE FORMA PARTE DE LA JURISDICCIÓN DEL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE PONCE, ILEGAL, VOLUNTARIA Y CRIMINALMENTE POSEYÓ CON LA INTENCIÓN DE DISTRIBUIR LA SUSTANCIA CONTROLADA CONOCIDA COMO COCA[Í]NA, A MENOS DE CIEN METROS RADIALES DE LA CANCHA DE BALONCESTO DE LA BARRIADA BÉLGICA DE PONCE, SIN LA AUTORIZACIÓN EN LEY PARA ELLO, SIENDO ESTA UNA DE LAS INCLUIDAS EN LAS CLASIFICACIONES I A V DE ESTA LEY, QUE ES UNA INSTALACIÓN RECREATIVA, PÚBLICA O PRIVADA, O EN LOS ALREDEDORES DE CUALQUIERA DE ESTAS, ESTANDO DENTRO DE UN ÁREA DE HASTA CIEN (100) METROS RADIALES A CONTARSE DESDE LOS LÍMITES DEL LUGAR.[5]

EL REFERIDO ACUSADO JOSEPH LEE CINTR[Ó]N D[Á]VILA, PARA EL DÍA 13 DE ABRIL DE 2021, A ESO DE LAS 9:30 A.M. Y EN PONCE, PUERTO RICO, QUE FORMA PARTE DE LA JURISDICCIÓN DEL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE PONCE, ILEGAL, VOLUNTARIA Y CRIMINALMENTE

---

[3] Apéndice del Recurso, págs. 12-15.
[4] 24 LPRA sec. 2411a.
[5] Apéndice del Recurso, págs. 6-7.

POSEYÓ CON LA INTENCIÓN DE DISTRIBUIR LA SUSTANCIA CONTROLADA CONOCIDA COMO HERO[Í]NA, A MENOS DE CIEN METROS RADIALES DE LA CANCHA DE BALONCESTO DE LA BARRIADA BÉLGICA DE PONCE, SIN LA AUTORIZACIÓN EN LEY PARA ELLO, SIENDO ESTA UNA DE LAS INCLUIDAS EN LAS CLASIFICACIONES I A V DE ESTA LEY, QUE ES UNA INSTALACIÓN RECREATIVA, PÚBLICA O PRIVADA, O EN LOS ALREDEDORES DE CUALQUIERA DE ESTAS, ESTANDO DENTRO DE UN ÁREA DE HASTA CIEN (100) METROS RADIALES A CONTARSE DESDE LOS LÍMITES DEL LUGAR.[6]

EL REFERIDO ACUSADO JOSEPH LEE CINTR[Ó]N D[Á]VILA, PARA EL DÍA 13 DE ABRIL DE 2021, A ESO DE LAS 9:30 A.M. Y EN PONCE, PUERTO RICO, QUE FORMA PARTE DE LA JURISDICCIÓN DEL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE PONCE, ILEGAL, VOLUNTARIA Y CRIMINALMENTE POSEYÓ CON LA INTENCIÓN DE DISTRIBUIR LA SUSTANCIA CONTROLADA CONOCIDA COMO MARIHUANA, A MENOS DE CIEN METROS RADIALES DE LA CANCHA DE BALONCESTO DE LA BARRIADA BÉLGICA DE PONCE, SIN LA AUTORIZACIÓN EN LEY PARA ELLO, SIENDO ESTA UNA DE LAS INCLUIDAS EN LAS CLASIFICACIONES I A V DE ESTA LEY, QUE ES UNA INSTALACIÓN RECREATIVA, PÚBLICA O PRIVADA, O EN LOS ALREDEDORES DE CUALQUIERA DE ESTAS, ESTANDO DENTRO DE UN ÁREA DE HASTA CIEN (100) METROS RADIALES A CONTARSE DESDE LOS LÍMITES DEL LUGAR.[7]

Luego de celebrada la Vista Preliminar (VP) el 19 de agosto de 2022,[8] el TPI encontró causa para acusar al Peticionario, pero al amparo del Art. 401 de la Ley Núm. 4.[9] Por lo cual, el Ministerio Público procedió a presentar las correspondientes acusaciones.[10]

Mientras se ventilaba el pleito anterior, el Estado instó un segundo procedimiento contra el señor Cintrón Dávila el 6 de mayo de 2021, en el cual se alegó que este cometió tres violaciones adicionales al Art. 411-A de la Ley Núm. 4 (en adelante, el *Segundo Caso*). Dichas imputaciones se sustentaron en hechos presuntamente

---

[6] *Id.*, págs. 8-9.
[7] *Id.*, págs. 10-11.
[8] Casos Núm. J1VP202100410-00412.
[9] 24 LPRA sec. 2401. En este *Primer Caso* testificaron los agentes Vargas Ibarra y Caraballo Denisa. En síntesis, ambos abordaron con sus declaraciones los hechos relacionados al diligenciamiento de la *Orden de Registro y Allanamiento* el 13 de abril de 2021.
[10] Apéndice del Recurso, págs. 35-40. Casos Núm. JSC2022G0139-0141.

ocurridos el 31 de marzo de 2023, según fueron narrados por el Agte. Pérez Rivera en la declaración jurada expuesta en la *Orden de Registro y Allanamiento*. En particular, el Ministerio Público dispuso que:

> EL REFERIDO ACUSADO JOSEPH CINTR[Ó]N D[Á]VILA, ALL[Á] PARA EL DÍA 31 DE MARZO DE 2021, EN PONCE, PUERTO RICO, QUE FORMA PARTE DE LA JURISDICCI[Ó]N DEL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE PONCE, ILEGAL, VOLUNTARIA, A SABIENDAS E INTENCIONALMENTE EN VIOLACI[Ó]N A LAS DISPOSICIONES DE LA LEY DE SUSTANCIAS [CONTROLADAS] DISTRIBUY[Ó] LA SUSTANCIA CONTROLADA CONOCIDA COMO HERO[Í]NA A ROBERTO GONZ[Á]LEZ JIM[É]NEZ, DENTRO [DE] 38.57 METRO DESDE LA CANCHA BAJO TECHO DE LA BDA. B[É]LGICA, HASTA LA RESIDENCIA DEL ACUSADO.[11]

> EL REFERIDO ACUSADO JOSEPH CINTR[Ó]N D[Á]VILA, ALL[Á] PARA EL DÍA 31 DE MARZO DE 2021, EN PONCE, PUERTO RICO, QUE FORMA PARTE DE LA JURISDICCI[Ó]N DEL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE PONCE, ILEGAL, VOLUNTARIA, A SABIENDAS E INTENCIONALMENTE EN VIOLACI[Ó]N A LAS DISPOSICIONES DE LA LEY DE SUSTANCIAS [CONTROLADAS] DISTRIBUY[Ó] LA SUSTANCIA CONTROLADA CONOCIDA COMO COCA[Í]NA A ROBERTO GONZ[Á]LEZ JIM[É]NEZ, DENTRO [DE] 38.57 METRO DESDE LA CANCHA BAJO TECHO DE LA BDA. B[É]LGICA, HASTA LA RESIDENCIA DEL ACUSADO.[12]

> EL REFERIDO ACUSADO JOSEPH CINTR[Ó]N D[Á]VILA, ALL[Á] PARA EL DÍA 31 DE MARZO DE 2021, EN PONCE, PUERTO RICO, QUE FORMA PARTE DE LA JURISDICCI[Ó]N DEL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE PONCE, ILEGAL, VOLUNTARIA, A SABIENDAS E INTENCIONALMENTE EN VIOLACI[Ó]N A LAS DISPOSICIONES DE LA LEY DE SUSTANCIAS [CONTROLADAS] DISTRIBUY[Ó] LA SUSTANCIA CONTROLADA CONOCIDA COMO MARIHUANA A ROBERTO GONZ[Á]LEZ JIM[É]NEZ, DENTRO [DE] 38.57 METRO DESDE LA CANCHA BAJO TECHO DE LA BDA. B[É]LGICA, HASTA LA RESIDENCIA DEL ACUSADO.[13]

No obstante, luego de celebrada la VP[14] los días 29 de junio, 19 de octubre, 9 de noviembre y 7 de diciembre de 2021, y una posterior VPA el 15 de febrero de 2022,[15]

---

[11] *Id.*, pág. 15.
[12] *Id.*, pág. 16.
[13] *Id.*, pág. 17.
[14] Casos Núm. J1VP202100495-00497.
[15] Casos Núm. JSVP202200010-00012.

el TPI concluyó que no existía causa para acusar al Peticionario por las denuncias imputadas en este *Segundo Caso.*[16]

En vista de ello, el 6 de octubre de 2022, el señor Cintrón Dávila presentó en el *Primer Caso* una *Moción en Solicitud de Desestimación.*[17] En síntesis, alegó que los procedimientos en su contra tenían como base los mismos hechos esenciales. Por lo cual, entendía que habiéndose determinado no causa para acusar en el *Segundo Caso*, procedía que el primero se desestimara bajo la doctrina de cosa juzgada, en su modalidad de impedimento colateral por sentencia.

El 17 de octubre de 2022 el Ministerio Público presentó una *Oposición a Moción de Desestimación* en la cual arguyó que no procedía aplicar la doctrina de impedimento colateral por sentencia.[18] Ello pues, a su juicio, los casos instados en contra del señor Cintrón Dávila trataban sobre acontecimientos fácticos distintos: por un lado, la transacción de sustancias controladas en la que alegadamente participó el Peticionario el 31 de marzo de 2021 y por otro, la evidencia incautada en la residencia donde se ubicaba el mismo el 13 de abril de 2021. Además, sostuvo que una determinación de no causa en una VP o VPA no constituye una adjudicación en los méritos, por lo que no puede tomarse en cuenta para aplicar la doctrina invocada.

El 23 de enero de 2023 el TPI emitió una *Resolución* declarando *No Ha Lugar* la solicitud de desestimación del

---

[16] Apéndice del Recurso, págs. 18-32. En este *Segundo Caso*, tanto en la VP como en la VPA, testificaron los agentes Pérez Rivera y Caraballo Denisa. Sus testimonios se centraron, en síntesis, sobre los hechos expuestos en la declaración bajo juramento incluida en la *Orden de Registro y Allanamiento*.
[17] *Id.*, págs. 41-47.
[18] *Id.*, págs. 48-52.

señor Cintrón Dávila.[19] Al así hacerlo, el foro primario dispuso que:

> **[U]na determinación de no causa en vista preliminar no constituye cosa juzgada o impedimento colateral, puesto que en este tipo de procedimiento lo que se pretende es determinar la existencia o no de causa probable para acusar, sin que se ventilen en sus méritos los hechos esenciales alegados.**
>
> En el caso de autos, se llevaron a cabo vistas preliminares atendiendo cuestiones diferentes en donde estuvo involucrado el acusado de epígrafe. En una se atendió el asunto donde hubo una alegada transacción de sustancias controladas y se arrestó a un comprador y al referido acusado y en otra se atendió un asunto relacionado con el allanamiento mediante orden de la residencia donde habita dicho acusado. Ciertamente se trata de asuntos distintos en vistas distintas donde no hubo similitud en cuestiones de hechos esenciales, adjudicados y determinados. Por otro lado, se trataron de vistas preliminares en d[o]nde no se ventilaron en sus méritos los hechos esenciales de cada caso". (Énfasis en el original).[20]

Inconforme, el señor Cintrón Dávila compareció ante esta Curia y alegó que el foro primario cometió el siguiente error:

> *Incidió el Tribunal de Primera Instancia, Sala Superior de Ponce (Hon. Jesús E. Soto Amadeo Juez), al concluir que una determinación final en vista preliminar no constituye cosa juzgada o impedimento colateral, a pesar de que dicha determinación es una final y firme que exoneró al peticionario, y en la cual se litigaron, adjudicaron y determinaron hechos esenciales para el caso de autos.*[21]

El 28 de febrero de 2023 emitimos una *Resolución* concediéndole al Procurador General hasta el 7 de marzo de 2023 para que mostrara causa por la cual no debíamos expedir el auto de *certiorari* y revocar la decisión objeto del mismo. Durante el día señalado para cumplir

---

[19] *Id.*, págs. 2-5.
[20] *Id.*, págs. 4-5.
[21] Énfasis y bastardillas en el original.

con lo ordenado, el Procurador General solicitó que se le proveyera un término adicional para expresar su postura. Dicha petición fue declarada *Ha Lugar*, y se le concedió hasta el 14 de marzo de 2023 para que se expresara al respecto.

Cumplido lo anterior, el 16 de marzo de 2023 expedimos el auto ante nuestra consideración. En consecuencia, ordenamos al Peticionario que notificara las fechas y el salón de sesiones donde se llevaron a cabo las vistas, para así poder obtener la grabación de los procedimientos. Debido a esto, se le indicó a los comparecientes que no era necesario que facilitaran las transcripciones de la prueba oral. Por otro lado, se otorgó un término a cada parte para que presentaran alegatos en torno a los méritos del presente recurso.

Habiéndose satisfecho nuestros requerimientos y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de resolver.

-II-

A. *Certiorari*

El auto de *certiorari* es el vehículo procesal que permite a un foro de mayor jerarquía revisar las decisiones de un tribunal inferior.[22] Contrario a una apelación, la expedición de este recurso descansa en la sana discreción del tribunal apelativo.[23]

La Regla 52.1 de Procedimiento Civil, limita la facultad que tiene el Tribunal de Apelaciones para revisar las resoluciones u órdenes interlocutorias que

---

[22] *Medina Nazario v. McNeill Healthcare LLC*, 194 DPR 723, 728-729 (2016).
[23] *Id.*, pág. 729.

emite el Tribunal de Primera Instancia.[24] En específico, la citada regla dispone que:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[25]

Por otro lado, el examen que hace este Tribunal de Apelaciones previo a expedir un recurso de *certiorari* no se da en el vacío ni en ausencia de parámetros.[26] A tales efectos, la Regla 40 de nuestro Reglamento señala los criterios que se deben tomar en consideración al evaluar si debe expedir o no el auto discrecional, a saber:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los

---

[24] *800 Ponce de Leon Corp. v. Am. Int'l Ins. Co. of Puerto Rico*, 205 DPR 163, 175 (2020).
[25] 32 LPRA Ap. V, R. 52.1.
[26] *IG Builders v. BBVAPR*, 185 DPR 307, 338 (2012), citando a *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580 (2011).

autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[27]

### B. La Doctrina de Cosa Juzgada y su Modalidad del Impedimento Colateral por Sentencia en Casos Penales

La aplicación de la doctrina de cosa juzgada no se limita a los casos civiles. La Regla 64(f) de Procedimiento Criminal, establece como fundamento para la desestimación de un pliego acusatorio que "la causa, o alguna controversia esencial de la misma, es cosa juzgada".[28] Ahora bien, esta doctrina es de aplicación a casos penales cuando está envuelto un delito distinto en el segundo caso.[29] Ello pues, si en el segundo procedimiento se imputa el mismo delito, prevalecería en su lugar una alegación de exposición anterior.[30]

En vista de esto, en nuestro ordenamiento jurídico penal se acogió la modalidad de la cosa juzgada conocida como el impedimento colateral por sentencia. La figura del impedimento colateral por sentencia "recoge la norma de que una sentencia resulta concluyente entre las mismas partes si versa y conlleva la relitigación en un caso posterior de las **cuestiones de hechos esenciales**, adjudicadas y determinadas previamente en tal sentencia". (Énfasis y subrayado nuestro).[31] Es decir,

---

[27] 4 LPRA Ap. XXII-B, R. 40.
[28] 34 LPRA Ap. II, R. 64(f).
[29] *Pueblo v. Lugo*, 64 DPR 554, 558 (1945).
[30] *Id.*, pág. 559.
[31] *Pueblo v. Ortiz Marrero*, 106 DPR 140, 143 (1977).

se prohíbe "la ventilación de un segundo proceso y es motivo de desestimación, aun cuando se trate de un delito distinto, si dentro de la adjudicación del caso anterior, clara y directamente, se dilucidaron y resolvieron **hechos necesariamente decisivos** para el segundo". (Énfasis y subrayado nuestro).[32]

En suma, como señala la Profa. Dora Nevares Muñiz, para que entre en vigor la doctrina de cosa juzgada es necesario que converjan los siguientes requisitos: (1) que un proceso anterior, (2) entre las mismas partes, (3) en un tribunal con jurisdicción, (4) bajo un pliego acusatorio que impute un delito diferente, (5) se haya adjudicado definitivamente en los méritos **un hecho esencial** a la controversia que se discute en el segundo caso, (6) a favor del acusado. (Énfasis y subrayado nuestro).[33]

Por otra parte, resulta preciso examinar la determinación emitida por nuestro Tribunal Supremo en *Pueblo v. Pagán Santiago*[34] por su alta pertinencia al caso de autos. En aquella ocasión, unos apelantes reclamaban que:

> [L]a determinación de no causa en vista preliminar por los delitos graves que originalmente les fueron imputados junto a otros dos acusados, constituye cosa juzgada y es impedimento para que se ventilen en un segundo proceso, aún cuando se trate de delitos distintos, los hechos que se dilucidaron y se resolvieron en el primer procedimiento y que son decisivos para este segundo proceso.[35]

Sin embargo, nuestro Máximo Foro Judicial rechazó dicha teoría. Al así hacerlo, expresó que:

---

[32] *Id.*
[33] D. Nevares Muñiz, *Sumario de Derecho Procesal Puertorriqueño*, San Juan, Instituto para el Desarrollo del Derecho, Inc., 10ma ed., 2014, pág. 146.
[34] *Pueblo v. Pagán Santiago*, 130 DPR 470 (1992).
[35] *Id.*, pág. 488.

> Resalta a la vista la diferencia entre el citado caso de *Pueblo v. Ortiz Marrero* y el presente. **En aquél se ventiló el juicio en los méritos**, luego de lo cual se acogió el planteamiento sobre supresión de evidencia, **por lo que se produjo una *sentencia final y firme* de parte del Tribunal de Distrito. En el de autos, todo lo que se celebró fue una vista preliminar** donde se determinó que no existía causa probable para enjuiciar a los apelantes por los delitos graves que les habían sido imputados. **No habiéndose ventilado el caso en sus méritos** sobre todo lo concerniente a la admisibilidad de evidencia y a la coautoría de los apelantes con Pagán Santiago y su esposa Nereida Ortiz Sánchez, en relación con los delitos *menos graves*, **no existe una sentencia final y firme que active la doctrina de impedimento colateral por sentencia**, que recoge la norma de que una sentencia resulta concluyente entre las mismas partes cuando se trata y conlleva la relitigación en un caso posterior de las cuestiones de hecho esenciales, adjudicadas y determinadas previamente en tal sentencia. (Énfasis y subrayado nuestro).[36]

## -III-

Mediante su recurso de *certiorari*, el señor Cintrón Dávila alega que el TPI erró al rechazar su *Moción en Solicitud de Desestimación*. Según expone, la determinación de no causa emitida por el foro primario en el *Segundo Caso* instado en su contra impide que se pueda continuar tramitando el presente procedimiento. Esto pues, a su entender, los hechos evaluados por el TPI en aquella ocasión son los mismos que se tomaron en cuenta para obtener la *Orden de Registro y Allanamiento* que da base a este pleito. En vista de ello, arguye que procede aplicar la doctrina de impedimento colateral por sentencia y, en consecuencia, desestimar las acusaciones que este enfrenta. De lo contrario, considera que se estaría permitiendo que el TPI volviera a pasar juicio

---

[36] *Id.*, págs. 488-489.

sobre unos acontecimientos que fueron evaluados y adjudicados previamente por el tribunal.

Luego de analizar detenida y minuciosamente el expediente ante nuestra consideración, entendemos que no le asiste la razón. Veamos.

Si bien es cierto que la *Orden de Registro y Allanamiento* diligenciada al inicio de este *Primer Caso* estuvo fundada en hechos que posteriormente resultaron ser insuficientes para acusar al Peticionario en un segundo pleito, ello de por sí no justifica que se desestimen las presentes acusaciones al amparo de la doctrina de impedimento colateral por sentencia. Esto pues, los **hechos esenciales** envueltos en este *Primer Caso* son distintos a los adjudicados en el segundo. Incluso, de la regrabación de los procedimientos surge que el TPI hizo dicha distinción y que se limitó a evaluar los acontecimientos de cada caso por separado.

Por lo cual, en esta ocasión, le corresponde al TPI auscultar si el señor Cintrón Dávila estaba en posesión de las sustancias controladas alegadamente encontradas en la residencia número 5905 el **13 de abril de 2021**. Esto, a diferencia del *Segundo Caso*, el cual se enfocó en adjudicar si el Peticionario incurrió en alguna ilegalidad, cuando el Agte. Pérez Rivera lo vio entrar y salir en dos ocasiones de la mencionada propiedad para efectuar unas transacciones con otros individuos el **31 de marzo de 2021**. Debido a ello, la decisión emitida por el TPI en el *Segundo Caso* no conlleva un efecto sobre el proceso en curso, pues se tratan de asuntos independientes.

Por otra parte, aun bajo la premisa de que los dos casos en contra del señor Cintrón Dávila estuviesen

basados en los mismos hechos, la doctrina de impedimento colateral por sentencia no aplicaría. Esto pues, la decisión de no causa emitida tanto en la VP como en la VPA del *Segundo Caso* resulta insuficiente para invocar efectivamente la misma, por no constituir una adjudicación en los méritos, de conformidad a lo resuelto por el Tribunal Supremo en *Pueblo v. Pagán Santiago*, *supra*.[37]

Así las cosas, concluimos que el señalamiento de error levantado por el señor Cintrón Dávila no se cometió.

## -IV-

Por todo lo antes expuesto, *confirmamos* el dictamen recurrido.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

*Lcda. Lilia M. Oquendo Solís*
*Secretaria del Tribunal de Apelaciones*

---

[37] En su recurso de *certiorari* el Peticionario nos invita a resolver conforme a los casos del Tribunal Supremo que han aplicado la doctrina de impedimento colateral por sentencia a procesos de impugnación de confiscaciones. Sin embargo, luego de analizar el asunto en controversia, no vemos razones para desviarnos en este caso de la normativa jurídica expuesta en *Pueblo v. Pagán Santiago*, *supra*.

Sobre este particular, el Juez Salgado Schwarz hace constar que la doctrina pautada en *Pueblo v. Pagán Santiago*, *supra*, no necesariamente aplica a este caso, pues debe ser evaluada a la luz de la evolución jurisprudencial desarrollada en casos de impugnación de confiscaciones del Gobierno de Puerto Rico. Sin embargo, entiende que, aun apartándonos del mencionado caso, llegamos al mismo resultado.